IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case no: 16-cv-60661 WPD

PRASANT SHAH, individually and on )
Behalf of all others similarly situated )
)
Plaintiff, )
)
V )
)
)
DS HEALTHCARE GROUP INC., et 2l. )
)
Defendant. )

**VERIFIED RESPONSE TO VERIFIED MOTION
BY CASTLE PALMS NETWORKING INC.**

NOW COMES CASTLE PALMS NETWORKING INC. By its President, and undersigned counsel, and Responds to the Verified Motion as follows:

1. At no point did the CEO, the CFO or their attorneys notify Byron Owen or Castle Palms Networking that Daniel was being terminated from the company. Byron would normally be notified in order to remove access to accounts of former employees, however, Renee Barch-Niles used the Global Admin access instead to make changes including, on four separate occasions, removing Byron Owen's access without cause, resulting in regular IT duties of the company not being able to be performed, and in cases, and enumerated in emails to Renee, caused specific difficulties with maintenance, communications and needed additions and changes for the company to operate normally. Each time this would occur, he would request his access be restored so that he could carry on his duties and after a day or two access would be restored. At no point did Byron Owen or Castle

Palms Networking ever perform any duties not requested or authorized by Renee (CEO), Mark (CFO) or heads of departments, up until the changeover in the company.

2. Contrary to the false allegations about the evening of March 31, neither Byron Owen, nor Castle Palms Networking or any representative thereto, was present in Pompano Beach or participated in any "physical control" or any other control of physical property, computer systems, servers, connections, or anything else.

3. Chronology of events on March 31, 2016

   A. At 8:43 am: Byron Owen had Renee confirm formal password change on DNS registration with GoDaddy after expressing concern that she wanted these passwords changed and although the old Miami Beach business address from years prior was listed on the account, the accounts were registered in Daniel Khesin's name.

   Byron had planned to bring them to a meeting the next day to hand to Renee CEO and Mark CFO as, although he had given all the passwords to Mark CFO before, Byron had reminded them that could not honor their request to send passwords of domain administration through clear text email, and had offered various secure ways to send them.

B. 5:10 pm: Daniel Khesin copied Byron on notice to employees of removal of board and his resuming of President and advised everyone it will be made clear at 10 am meeting.

C. 5:42 pm: Daniel Khesin contacted Byron Owen via text message and phone and advised Byron Owen that the shareholders had voted out the board and he was mandated with taking the company back and fixing it from the problems caused by the board and the new CEO and CFO. Byron Owen requested proof of company control and gave Daniel his email address to send the pertinent documents.

D. 5:45 pm: Daniel sent link to SEC filing of 13 D and Termination of Board Directors. Byron Owen has his attorney review the information sent by Daniel's attorney and SEC filing to confirm Daniel does indeed have control of the company.

E. 5:52 pm: Having received the go ahead from his attorney, Byron Owen then followed Daniel's order as representing the majority of stock holders and reset the passwords as requested to Mark CFO and Renee CEO's accounts as Daniel said "I don't want them to destroy any evidence" to preserve data as requested. Byron Owen also turned off all remote QuickBooks access to preserve data from ANYONE making changes to the system so that the financial data will be preserved for any SEC investigation and disabled Renee

CEO and Mark CFO's logins from the company server to preserve data. The reset passwords on the emails were NOT GIVEN TO ANYONE or kept by Byron Owen.

F. 6:00 pm: Daniel advises Byron that "the new board will figure out what to do with this team moving forward."

G. 6:03 pm: Byron Owen turns on Daniel's DS Laboratories email for him, as it was turned off by Renee, the only other person that Byron had given Global Admin access to.

H. 6:06 pm: Byron Owen asks Daniel if he is going to the office, advises him he had planned to go there and meet with Renee CEO and Mark CFO and asks if he should go to the office the next morning. He said yes.

I. 7:30 pm: Daniel calls and requests the passwords for Renee CEO and Mark CFO's accounts. Byron resets them sending them to Daniel in a text message, and also unblocking Abner's email as requested.

J. 7:50 pm: Byron Owen pulls up his email. He sees an email from Renee CEO that said it was sent at 6:12 pm entitled Legal Opinion that just says "You will receive a letter from a lawyer. Please call me." He also sees an email from Joseph DeMaria sent at 7:25 pm that contains numerous **incendiary threats**

and allegations and requires Byron Owen to make changes and provides no proof, no case law and no information to back up his requests. Byron Owen forwards on to his attorney to review and discuss the validity.

K. 7:57 pm: Byron Owen advises Daniel of attorney email and advises him that he is reviewing it with his attorney.

L. 9:00 pm: Frank F. Owen, Counsel for Castle Palms Networking Inc., sends letter advising DeMaria that Byron Owen and Castle Palms Networking would NOT BE MAKING ANY MORE CHANGES, in direct OPPOSITION to Mr. DeMaria's FALSE allegations that "they refused to cease and desist" and advised he and Byron Owen would both go the next morning to DS Healthcare Group Inc. to meet and verify. A copy of that letter is attached as **EXHIBIT A** hereto and incorporated herein by reference.

M. Not viewed until the next day, at 10:51 pm DeMaria sends Byron Owen's attorney confirmation to (and this is a QUOTE from DeMaria, in direct opposition to his FASLE claims in the court filing) "Mr. Owen, you (sic) agreement to cease and desist from causing further harm to the Company is a correct first step. But it is a very small step." In that email, Mr. DeMaria also FASLELY stated Castle Palms Networking was informed of Daniel Khesin's termination. This is not true. Neither Byron Owen nor Castle Palms Networking was informed of such a termination. Furthermore, this email again failed to

provide any proof, and proper, court approved direction, any SEC filings or any case law supporting Mr. DeMaria's direction of action coupled with incendiary threats that render such directions, in the absence of any proper proof or court or case law backing, could not be taken to overrule Byron Owen and his attorney's already indicated direction of not making ANY changes until the meeting.

N. April 1, 2016

10 AM After listening to the meeting, and Daniel Khesin reading out emails of shareholders that gave him their vote and why, and why they wanted the board and CEO and CFO replaced, Byron Owen's attorney asked Renee point blank if she should be considered to be the person in charge and in power. She did not give an unequivocal answer. Mr. DeMaria did not show up at the meeting. Not with a court order. Not with case law. Not even to discuss why his directives were valid. At that point, Byron Owen's attorney rendered the opinion that as far as the current conditions and Law indicated, given the shareholders had spoken by giving Daniel the majority, that Byron Owen was to continue following Daniel Khesin's directives until further proof to the contrary. Renee CEO, fully present and not restricted to express her views, did not disagree.

4. April 1, 2016 Counsel for Castle Palms Networking sent Joseph A. De Maria a letter, which is attached hereto as **EXHIBIT B** and incorporated herein by reference.

5. Counsel for Castle Palms Networking reviewed the Federal Regulation submitted by Joseph A. Demaria in support of his contentions that a waiting period of 10 days was required.

   Said CFR is 17 CFR Section 240.14f-1 and states as follows:

   If, pursuant to any arrangement or understanding with the person or persons acquiring securities in a transaction subject to section 13(d) or 14(d) of the Act, any persons are to be elected or designated as directors of the issuer, otherwise than at a meeting of security holders, and the persons so elected or designated will constitute a majority of the directors of the issuer, then, not less than 10 days prior to the date any such person take office as a director, or such shorter period prior to that date as the Commission may authorize upon a showing of good cause therefor, the issuer shall file with the Commission and transmit to all holders of record of securities of the issuer who would be entitled to vote at a meeting for election of directors, information substantially equivalent to the information which would be required by Items 6(a), (d) and (e), 7 and 8 of Schedule 14A of Regulation 14A (§ 240.14a–101 of this chapter) to be transmitted if such person or persons were nominees for election as directors at a meeting of such security holders. Eight copies of such information shall be filed with the Commission.

6. A logical reading of the above CFR, exempts the 10-day waiting period when there is a meeting of security holders. I believe security holders in this instance means shareholders.

7. Therefore, Mr. Joseph A. Demaria's reference was unpersuasive.

8. In addition, Counsel for Castle Palms Networking spoke with Rose Schindler, Esq. attorney for Daniel Khesin, and she advised him that she had personally counted all the ballots and transfer of voting rights for about 56% of the stock to Mr. Khesin, and that the requirements of the BY Laws for DS Healthcare Group Inc., had been complied with, and that the alleged termination of Daniel Khesin was in violation of his employment agreement, which gave Mr. Khesin ultimate control and authority over DS Healthcare Group Inc. operations and considerations, and there was case law to support their positions.

VERIFICATION:

Under penalties and perjury, I declare that I have read the forgoing Response to Emergency Verified Motion and that the facts set forth therein are true and accurate.

_____
Byron R. Owen

Respectfully Submitted,
Frank F. Owen & Associates PA
Counsel for Castle Palms Networking
FL BAR 0702188
1091 Ibis Avenue, Miami Springs
FL 33166
Phone: 954-964-8000
Email: FFO@castlepalms.com

CERTIFICATE OF SERVICE

I hereby certify that on April ___ 2016 I electronically filed the foregoing with the Clerk of Court using CLM/ECF. I also certify that the forging document is being served this day on all counsel of record via transmission of Notices of Electronic generated by CM/ECF or in some other authorized manner.

Frank F. Owen

S/Frank F. Owen

# Frank F. Owen & Associates, P.A.

Florida License #0702188
Illinois License #3124947

1091 Ibis Avenue, Miami Springs, Florida 33166-3213
P: 954-864-8000  M: 305-984-8818  F: 305-602-3969

Mr. Joseph A. De Maria, Esq.
One Biscayne Tower, Suite 2750
2 South Biscayne Blvd.
Miami, FL 33131
Via email: jdemaria@foxrothschild.com

March 31, 2016

Ms. Rose M. Schindler, Esq.
GreenspoonMarder
One Boca Place, Suite 400-E
2255 Glades Road
Boca Raton, FL 33431
Via email: rose.schindler@gmlaw.com

RE: Castle Palms Networking and DS Health Care Group Inc.

Dear Mr. DeMaria and Ms. Schindler:

I represent Castle Palms Networking and Byron Owen.

I have reviewed the materials which Mr. Khesin and both of you provided to him this evening.

Pursuant to my instructions, Mr. Owen acted earlier this afternoon pursuant to Mr. Khesin's instructions based on Mr. Khesin's email, links to SEC Filings for Schedule 13D, and the Letter from Rose Schindler, Esq.

Mr. Owen will take no further actions this evening.

Mr. Owen will be at the DS Health Care Group Inc.'s offices at 1601 Greene Road Pompano Beach FL 33064 tomorrow, April 1, 2016, by 10AM, which is the time set by Mr. Khesin for everyone to meet there. I will be present as well.

Sincerely,

*Frank F. Owen* (signature)

Frank F. Owen

# Frank F. Owen & Associates, P.A.

Florida License #0702188
Illinois License #3124947

1091 Ibis Avenue, Miami Springs, Florida 33166-3213
P: 954-864-8000  M: 305-984-8818  F: 305-602-3969

Mr. Joseph A. De Maria, Esq.
One Biscayne Tower, Suite 2750
2 South Biscayne Blvd.
Miami, FL 33131
Via email: jdemaria@foxrothschild.com

April 1, 2016

Ms. Rose M. Schindler, Esq.
GreenspoonMarder
One Boca Place, Suite 400-E
2255 Glades Road
Boca Raton, FL 33431
Via email: rose.schindler@gmlaw.com

Mr. Abner Silva
Registered Agent for DS Healthcare Group Inc.
1100 Biscayne Blvd., Apt 5805
Miami, FL 33132

RE:  Castle Palms Networking and DS Health Care Group Inc.

Dear Mr. De Maria, Ms. Schindler, and Mr. Silva:

I represent Castle Palms Networking and Byron Owen.

Pursuant to my instructions, Mr. Owen for Castle Palms Networking Inc. shall take direction from Mr. Daniel Khesin.

The reasons for this include, but are not limited, to the following:

1. I attended the meeting held at DS Healthcare Group Inc.'s offices at 1601 Greene Road, Pompano Beach, FL 33064 this morning at 10 AM.

2. I have reviewed the materials which Mr. De Maria and Ms. Schindler provided, as well as the email sent by Mr. De Maria last night.

3. I have reviewed the Filings with the SEC.

4. Mr. De Maria indicates he is representing DS Healthcare, but according to SEC filings, Mr. Khesin has more than 51% of the voting stock for DS Healthcare and he says he has not retained Mr. De Maria to represent the company.

CASTLE PALMS NETWORKING AND DS HEALTHCARE GROUP

Exhibit B [1]

5. I have reviewed pertinent Florida Law, including but not limited to, Florida Statues Chapter 607.0702, Chapter 607.0706, Chapter 607.0808, and Chapter 607.1020.

6. I have reviewed the Articles of Incorporation filed with the Florida Department of State as they are available online for DS Healthcare Group Inc.

7. The bylaws online for DS Healthcare Group Inc., do not include a provision that directors can only be removed for cause which would limit Shareholders powers under 607.0808 (1).

8. Mr. De Maria's letter did not present any facts which indicate Mr. Khesin is not a shareholder holding more than 51% of the stock of DS Healthcare Group Inc.

9. Ms. Schindler's letter stated that "Mr. Khesin has obtained voting control of over 51% of the outstanding common stock in DS Healthcare Group Inc. As such in accordance with Florida Statutes and DS Healthcare Group By-Laws, Mr. Khesin now exercises all decision making and control over all corporate matters."

10. Ms. Schindler advised me by phone today she had personally counted the ballots and shares to Mr. Khesin and was in compliance with the company by-laws.

This letter is without prejudice to Castle Palms Networking Inc. and/or Byron Owen's rights that are capable of assertion under applicable law.

Sincerely,

*[signature]*

Frank F. Owen
Copy Castle Palms Networking