**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-cv-60661- Dimitrouleas/Snow

PRASANT SHAH, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

DS HEALTHCARE GROUP, INC.,
DANIEL KHESIN, RENEE BARCH-
NILES, DIANNE ROSENFELD, KARL
SWEIS, and MICHAEL POPE,

      Defendants.

_____/

**DS HEALTHCARE GROUP, INC.'S RESPONSE TO DANIEL KHESIN'S MOTION TO
STRIKE [D.E. 18]AND REPLY TO MEMORANDUM IN OPPOSITION TO VERIFIED
MOTION [D.E.19] AND CASTLE PALMS NETWORKING, INC. AND BYRON
OWEN'S MEMORANDUM IN OPPOSITION TO VERIFIED MOTION [D.E. 12]**

      DS Healthcare Group, Inc. ("DS Healthcare" or the "Company") submits this response to

Daniel Khesin's Motion to Strike Verified Emergency Motion for Temporary Restraining Order

and Preliminary Injunction [D.E. 18] ("Khesin Motion to Strike") and this Reply Memorandum

in response to: Khesin's Memorandum of Law in Opposition to the Verified Motion [D.E. 19]

("Khesin Memorandum"); and Castle Palms Networking Inc. and Byron Owen's Memorandum

of Law in Opposition to the Verified Motion [D.E. 12] ("Castle/Owen Memorandum"); and

states as follows:

      This Court has scheduled a hearing for April 13, 2016 on DS Healthcare's Verified

Emergency Motion for Temporary Restraining Order and Preliminary Injunction [D.E. 07].

("Verified Motion"). At that hearing, the Company will present evidence in support if its request

for a TRO and the appointment of a corporate monitor in order to protect the status quo pending the Court's further consideration of the issues raised by the Company against Khesin.  Indeed, if one thing is clear from the issues raised in the Verified Motion, the Court will need to sort out – based on evidence – the ownership of this public company, which will determine who is allowed to manage DS Healthcare.

Two separate counsel for Khesin have opposed the Verified Motion, as well as counsel for Castle Palms/Owen.  The three opposition submissions present a common theme to this Court; i.e., that Khesin has established control of the Company and that he should be allowed to manage the Company pursuant to the control that he claims to possess.  Further, Khesin asserts that his blatant violations of federal securities law are mere technicalities that should be overlooked by this Court.  Both Khesin and Castle Palms/Owen rely on the By-Laws of the Company to justify Khesin's take-over of the Company.  A copy of the By-Laws are attached as Exhibit F (the "By-Laws") to the Khesin Motion to Strike.

Counsel for Castle Palms/Owen asserts that there was a meeting of the Company's stockholders prior to Khesin's take-over.  (Castle/Owen Memorandum at 7.)  The By-Laws, Florida law and the indisputable facts belie that claim.  Section 2.02 of the By-Laws sets forth the procedure of properly noticing a special meeting of the shareholders.  It requires either a call of the Board of Directors or person authorized by the Board to do so, or a demand issued to the corporate secretary setting forth the reasons for the proposed meeting.  The By-Laws are consistent with the requirements of Section 607.0702, Fla. Stat.  None of the three counsel have presented any evidence that a properly noticed special meeting of the shareholders was conducted prior to Khesin's take-over – because it did not happen.  Thus, the exception to

Section 14(f) of the Williams Act and 17 CFR Section 240.14f-1 that counsel for Castle Palms/Owen attempts to rely on is without merit.

One of Khesin's counsel claims, in the Motion to Strike, is that Khesin secured control through an action without a shareholders' meeting, pursuant to Section 3.10 of the By-Laws. (Khesin Motion to Strike at 5.)  Khesin's other counsel blithely asserts that "[t]hese shareholders lawfully transferred their shares to Khesin so that he could act on behalf of the Company." (Khesin Memorandum at 16.)  Khesin claims that he acquired sufficient voting agreements to control 56% of the common stock of the Company.   However, the voting rights that he purportedly acquired were from purported stockholders who acquired their alleged shares in violation of the By-Laws and Florida law.

Section 7.04 of the By-Laws sets forth the procedure for the issuance of shares and requires the Board of Directors to issue shares.   This By-Law is consistent with Section 607.0621, Fla. Stat.  The Company will present documentary and testimonial evidence to this Court that there was no authorized issuance of the shares that Khesin relies upon to purportedly accumulate his majority control.  Shares that are allegedly issued without the required Board approval are void.  *See, e.g., Grimes v. Alteon, Inc.*, 804 A.2d 256, 266 (Del. 2002) (an agreement made by the Company's CEO without Board approval to issue shares was unenforceable under Delaware statute that is comparable to Florida statute); *Boris v. Schaheen*, 2013 WL 6331287, *14 n.171 (Del. Ch. Dec. 2, 2013) (relying on *Grimes* and invalidating shareholder consents based on invalid issuance of stock); *see also Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989) ("We rely with confidence upon Delaware law to construe Florida corporate law.  The Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines.") (citations omitted).

Fox Rothschild llp

Khesin's failure to secure voting agreements from lawful shareholders is revealed by the silence from Khesin on this fundamental requirement of Florida corporate law. The Declarations submitted by Khesin from the purported shareholders do not establish that the Board of Directors issued valid shares to them. Khesin has not presented any Board resolutions or minutes, or any documentary evidence from the corporate book to support this fundamental requirement of Florida law. It is unsurprising that Khesin refused to submit any of his own testimony to sustain his claims, in view of the securities fraud and other violations of federal law that he has committed.[1] But Khesin's entire argument falls apart when he cannot prove that he is seeking to vote lawfully acquired shares.

Even if Khesin had complied with the By-Laws in seeking to acquire control of the Company, Khesin clearly – and admittedly – violated Section 14(f) of the Williams Act. One of Khesin's counsel tries to avoid the consequences of this blatant violation by asserting that they were mere "technical violations". (*See, e.g.,* Khesin Motion to Strike at 10.) Contrary to Khesin's suggestion that this Court can simply ignore the requirements of the federal securities laws, the indisputable facts of this case supports the issuance of injunctive relief in light of this clear – and admitted – violation of the Williams Act. (*See* Verified Motion at pp. 11-12 and the cases cited therein.)

One of Khesin's counsel tries to avoid the consequences of Khesin's illegal acts by claiming that this Court cannot grant a preliminary injunction against the Defendant because the

---

[1] Khesin and his co-conspirator Owen (and Castle Palms), violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by exceeding their lawful authority when they unlawfully seized control of the Company's information systems. This violation carries criminal and civil consequences. *See United States v. Rodriguez*, 628 F.3d 1258, 1263-65 (11th Cir. 2010) (upholding conviction for exceeding authority); *Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371-72 (S.D. Fla. 2009) (granting, in part, preliminary injunction and finding that had exceeded his authority in accessing a protected computer).

Company has not filed a formal claim against him, citing *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005). (Khesin Memorandum at 8.) Undersigned counsel is well aware of the requirement that preliminary injunctive relief that continues until the end of this case must be supported by a formal claim. However, the exigencies of this case require a careful step-by step approach to protect the Company. The request for injunctive relief arises directly out of the facts set forth in the class action complaint, and the Court has jurisdiction over both Khesin and the Company. The facts of this case are far different from those in *Alabama*. After Plaintiffs filed this class action, the Company's insurer was immediately placed on notice of the claim and the Company and the individual defendants were required to comply with the insurer's requirements to be protected by coverage. One of those requirements is that defense counsel for the class action claims must be chosen from a pre-approved panel. Undersigned counsel did not have the authority to file a general appearance and an answer to the class action complaint on behalf of the Company without the insurer's approval. Thus, the Company attempted to persuade Khesin's counsel to act in a reasonable manner based on the indisputable violations of the By-Laws, Florida law and Federal law. When Khesin's counsel ignored the Company's repeated demands, the Verified Motion was filed, which sets forth all of the facts that support the issuance of injunctive relief. As the protection of the Company and its innocent shareholders should be the paramount concern at the April 13 hearing, undersigned counsel is filing a stand-alone cross-claim, pursuant to Rule 13(g), Fed. R. Civ. P.

Khesin also claims that there is no irreparable harm because "the majority of the shareholders entered into voting agreements with Khesin and granted him voting power for the express purpose of changing the Board of Directors." (Khesin Memorandum at 14.) Khesin further claims that the Public Interest would be served in "Respecting the Wishes of the

Company's Shareholders." (*Id.* at 15.) When Khesin cannot prove to this Court that he lawfully acquired voting rights from legitimate shareholders, and when this Court rejects Khesin's contention that his intentional violation of the Williams Act is not a mere technicality, his "irreparable injury" and "Public Interest" arguments fail. The Company is being seriously injured, and the Public Interest is not being served, by allowing Khesin to trample upon federal securities law, while ignoring DS Healthcare's By-Laws and the requirements of Florida law, in his desperate effort to retain control of this public company.

Khesin's final argument is that the Company has unclean hands because it violated his employment agreement when he was terminated. (*Id.* at 16-18.) Khesin's employment agreement must be read in conjunction with the By-Laws and Florida law, as well as the evidence of his serious misconduct that led to his termination. Section 4.16(2) of the By-Laws authorizes the Board to remove an officer at any time, with or without cause. This By-Law is consistent with Section 607.0842(2), Fla. Stat. Further, whether or not Khesin may be able to sustain a claim against the Company for damages, Florida law is clear that he is not entitled to maintain his position under these circumstances. *See Mosley v. DeMoya*, 497 So. 2d 696, 697-98 (Fla. Dist. Ct. App. 1986) (reversing trial court order that prohibited Company from terminating president); *Montgomery Pipe & Tube Co. of Fla. v. Mann*, 205 So. 2d 660, 661-62 (Fla. Dist. Ct. App. 1968) (removed president was not entitled, prior to final hearing, to order directing corporation to reinstate and continue paying salary because of reasonable doubt as to whether corporation's bylaws and shareholders agreement controlled, were in direct conflict or ambiguous with respect to president's employment contract.); *Slusher v. Greenfield*, 488 So. 2d 579, 582 (Fla. Dist. Ct. App. 1986) (employment agreement void for illegality).

Khesin claims that evidence of his blatant violations of the By-Laws and Florida corporate law and the federal securities laws should have been overlooked by the independent audit committee of this public company.   Moreover, when the Board properly exercised its fiduciary duty to terminate Khesin based on his indisputable misconduct, he claims that he was entitled to use strong-arm tactics to seize control of the Company and lock out management and that it is the Company and its independent directors who have come to this Court with unclean hands.  Not even Alice from Wonderland would be so bold as to present such an upside down view of reality to this Court.[2]   When this Court hears the indisputable evidence of Khesin's misconduct and blatant violations of Florida and Federal law, this Court should not hesitate to enter a temporary restraining order and appoint a corporate monitor in this case.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Counsel for DS Healthcare Group, Inc.*
2 S. Biscayne Blvd., Suite 2750
Miami, Florida 33131
Telephone: (305) 442-6547

By:     *s/Joseph A. DeMaria*
   **Joseph A. DeMaria, B.C.S.**
   Florida Bar No. 764711
   Email: jdemaria@foxrothschild.com
        mmiller-hayle@foxrothschild.com
and

   **Ernest Badway**
   Fox Rothschild LLP
   100 Park Avenue, Suite 1500
   New York, NY, 10017
   Telephone: (212) 878-7986
   Facsimile:  (212) 692-0940

---

[2] Lewis Carroll, Alice's Adventures in Wonderland and Through the Looking Glass (Knopf 1992) (1865); *see also Sundance Associates, Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998) ("The government's approach leads us down a path toward Alice's Wonderland, where up is down and down is up and words mean anything.").

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 12, 2016**, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Joseph A. DeMaria*
Joseph A. DeMaria

Fox Rothschild LLP

## <u>SERVICE LIST</u>
## (CASE NO. 16-CV-60661- DIMITROULEAS/SNOW)

| | |
|---|---|
| ***<u>Via CM/ECF</u>***<br>**LAURENCE ROSEN, ESQ.**<br>The Rosen Law Firm, P.A.<br>275 Madison Avenue, 34th Floor<br>New York, NY 10116<br>Telephone: (212) 686-1060<br>Facsimile:  (212) 202-3827<br>Email: lrosen@rosenlegal.com<br><br>*Counsel for Plaintiff* | ***<u>Via E-Mail</u>***<br>Rose M. Schindler, Esq.<br>Greenspoon Marder<br>One Boca Place, Suite 400-E<br>2255 Glades Road<br>Boca Raton, Florida 33431<br>Telephone: (561) 994-2212<br>Facsimile:  (561) 807-7529<br>Email: rose.schindler@gmlaw.com<br><br>*Counsel for Daniel Khesin* |
| ***<u>Via CM/ECF</u>***<br>**FRANK F. OWEN, ESQ.**<br>Frank F. Owen & Associates, P.A.<br>1091 Ibis Avenue<br>Miami Springs, Florida 33166-3213<br>Telephone: (954) 864-8000<br>Facsimile:  (305) 602-3969<br><br>*Counsel for Castle Palms Networking and Byron Owen* | ***<u>Via E-Mail</u>***<br>**DANIEL KHESIN**<br>17689 Middlebrook Way<br>Boca Raton, FL 33496<br>Email:  daniel@dskx.biz<br>        daniel@dslaboratories.com |

Fox Rothschild LLP