UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-60661- Dimitrouleas/Snow

PRASANT SHAH, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

DS HEALTHCARE GROUP, INC., DANIEL KHESIN, RENEE BARCH-NILES, DIANNE ROSENFELD, KARL SWEIS, and MICHAEL POPE,

    Defendants.

_____/

**DS HEALTHCARE GROUP, INC.'S CROSS-CLAIM AGAINST DEFENDANT/CROSS-DEFENDANT DANIEL KHESIN**

Defendant/Cross-Claimant DS Healthcare Group, Inc. ("DS Healthcare" or the "Company"), by and through its undersigned counsel and pursuant to Rule 13, Federal Rules of Civil Procedure, files this cross-claim against Defendant/Cross-Defendant Daniel Khesin ("Khesin"), and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff Prasant Shah ("Plaintiff") initiated this action.

2.    DS Healthcare is a Florida corporation organized on January 26, 2007 (formerly known as Divine Skin, Inc.). The Company develops proprietary technologies and products for hair care and personal care needs. The Company operates through a network of retailers across North America and distributors throughout Europe, Asia and South America. The Company's corporate headquarters are located at 1601 Green Road, Pompano Beach, Florida 33064.

3. Defendant/Cross-Defendant Khesin is a natural person, citizen of the State of Florida, and resides within the boundaries of this district.

4. This Court has original jurisdiction hereof under, *inter alia*, § 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Company's Cross-Claim against Khesin under 28 U.S.C. § 1367.

5. Venue in the Southern District of Florida is proper because Defendant/Cross-Defendant resides within the boundaries of this district and, pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b), because the Company conducts business in this district and maintains its headquarters in this district.

## GENERAL ALLEGATIONS

6. DS Healthcare's Cross-Claim against Khesin involves the same underlying facts that are at issue in this litigation.

7. Khesin has blatantly violated the federal securities laws in his effort to seize control of the Company after his termination as an officer on March 17, 2016.

8. His misconduct includes, *inter alia*, seizing physical control of the Company's premises in Pompano Beach, Florida on the evening of March 31, 2016, locking senior management out of the Company, shutting down access to the Company's information systems, publishing false statements about his control of the Company and seeking to take unlawful actions to replace the Board of Directors and senior management.

9. Khesin's refusal to vacate the Company premises and to return control of DS Healthcare to senior management is preventing the current Chief Executive Officer, Renee Barch-Niles ("Ms. Barch-Niles") and other key employees from managing the day-to-day affairs of the Company.

10. Khesin's misconduct is also interfering with the Company's ability to properly respond to the allegations raised in this lawsuit, investigate a shareholder's derivative demand that has been served on the Company and comply with the Company's SEC and NASDAQ reporting requirements, including the requirement that the Company file its annual report, Form 10-K and the announced restatements of two 2015 quarterly reports by the extended deadline of April 15, 2016.

11. Khesin has made a mockery of the laws regulating this public company and this Court's immediate intervention is needed to protect DS Healthcare and its legitimate constituents.

12. The actions that led to Khesin's termination are the subject of this lawsuit, which invokes the Court's exclusive jurisdiction under the federal securities laws.

**A.     Background**

13. The Company reported net losses of $1,312,159 and $3,225,290 for the years ended December 31, 2014 and December 31, 2013, respectively.  During that time period, Khesin was the Chief Executive Officer and Chief Financial Officer of the Company.

14. On October 26, 2015, the Board of Directors of the Company, with the agreement of Khesin, appointed Ms. Barch-Niles as CEO.  She had over 18 years of experience in DS Healthcare's industry and was dedicated to bringing her innovative, high quality experience to provide a positive impact to the DS Healthcare brands.

15. Subsequently, the Company appointed Mark Brockelman as the Chief Financial Officer on January 6, 2016 (again with the agreement of Khesin).  Mr. Brockelman had over 10 years of experience serving as a CFO to public and private companies in the media, sports and

health and dental industries and was hired to bring his strong record in leading transactions, initiatives and strategies within finance functions to the Company.

### B. The Investigation and Termination of Daniel Khesin

16. Beginning in late February 2016, Ms. Barch-Niles, Mr. Brockelman and the Audit Committee of the Board of Directors uncovered issues that raised concerns regarding the unauthorized issuance of over 625,000 shares of the Company's stock by the Company's head of Investor Relations to himself.

17. When confronted with this evidence, the head of Investor Relations insisted the stock was due to him but was unable to support that claim.

18. The head of Investor Relations was terminated and undersigned counsel was hired to demand return of the stock.

19. Subsequently, the former head of Investor Relations made a demand for the issuance of more stock and cash compensation. In response to that demand, undersigned counsel expanded the investigation to review all historical stock issuances.

20. Deeper review determined that Khesin was also engaged in activity that required additional investigation.

21. Following counsel's review of hundreds of thousands of Company documents—including various agreements, stock transfer records, and Company emails—and interviews of almost a dozen key individuals, evidence was uncovered of stock manipulation and accounting fraud.

22. Counsel reviewed numerous consulting agreements executed by Khesin, which purported to transfer Company stock to third-party consultants.

23. These records reflected a scheme being orchestrated by Khesin and the head of Investor Relations to manipulate the trading volume and price of the Company's stock.

24. The investigation also revealed, through various stock transfer records, that certain shares were being transferred in contravention of their restrictions.

25. Counsel collected thousands of emails, including emails that had been recently deleted.

26. After performing targeted searches, counsel uncovered evidence of various potential securities and accounting violations, including: stock manipulation, accounting fraud, tax evasion, channel stuffing, fraudulent sales, manipulation of company deals, transfer of restricted shares, insider stock transfers and sharing of material non-public Company information with third-parties.

27. In addition, counsel found evidence of Khesin coordinating with a straw buyer—his own father Alexander Khesin—to purchase restricted shares of the Company and subsequently have those restrictions removed.

28. Other "under-the-table" deals were made with various insiders for Company stock, such as with the head of Investor Relations and his separate company.

29. Further, emails revealed that Khesin and the head of Investor Relations repeatedly shared material non-public information with third-parties prior to the Company's public filings.

30. Counsel also learned that Khesin executed consulting agreements with third-parties, in exchange for Company stock. Many of these agreements purported to transfer hundreds of thousands of shares of Company stock in exchange for limited and ambiguous services under the agreements.

31.  Counsel also uncovered evidence of accounting fraud perpetrated by Khesin and the head of Investor Relations. For example, various 2014 and 2015 emails revealed a kickback scheme involving channel stuffing and fraudulent sales.

32.  Emails from September 21 and 22, 2015 also reflected Khesin attempting to evade certain tax obligations.

33.  As a result of these findings, the Company terminated Khesin for cause.

**C.   The Company's Public Reporting of its Termination of Daniel Khesin**

34.  Based on the record of illegal activity that counsel uncovered, the Audit Committee of the Company's Board of Directors authorized counsel to report these findings to the Miami office of the Securities and Exchange Commission, which occurred on March 21, 2016.

35.  Further, the Company filed a Form 8-K on March 23, 2016 that addressed this investigation and the actions that were taken to prevent Khesin from engaging in further misconduct.

36.  The Company also reported its findings to its outside independent auditors.

**D.   The Class Action Lawsuits are Filed, a Shareholder's Demand is Received by the Company and the SEC's Division of Enforcement Requests Information**

37.  On March 29, 2016, the first class action lawsuit was filed in this case. Accordingly, this Court has jurisdiction over this case and over Defendants DS Healthcare and Khesin.

38.  On March 30, 2016, a second class action lawsuit, *Walker v. DS Healthcare Group Inc.*, Case No. 16-cv-60674-MORENO was filed.

39. On April 4, 2016, the financial press reported the filing of a third class action lawsuit.

40. Pursuant to Local Rule 3.8, all related actions will presumably be transferred to this Court as the lowest case number.

41. On March 29, 2016, the Company received a stockholder demand pursuant to Section 607.07401, Fla. Stat.

42. Pursuant to Florida law, the Company has the duty and right to investigate the allegations in the demand and to respond to the demand in a timely manner.

43. On April 1, 2016, Senior Counsel to the Miami Office of the SEC's Division of Enforcement sent a letter to undersigned counsel requesting that the Company preserve all documents and electronic information and begin the process of providing information to the SEC.

### E. Khesin's Unlawful Attempts to Control the Board of Directors and Strong-Arm Takeover of the Company

44. After Khesin was removed from the Company and had learned that the Audit Committee reported his misconduct to the SEC and the public, he took a series of improper actions in an effort to secure control of the Company.

45. As of December 31, 2015, Khesin owned 19.3% of the shares of the Company.

46. On March 29, 2016, Khesin filed with the SEC a Schedule 13D in which he claimed to have increased his voting interest in issued DS Healthcare shares to 56%.

47. Khesin also attached alleged "Voting Agreements" to support his purported purchases of these purported voting interests. However, the Voting Agreements, each of which

is identical to the other, reflect that only voting control of the shares was allegedly transferred and only for a period not to exceed 6 months.

48. Khesin did not acquire ownership in the above-referenced shares.

49. Khesin provided no consideration for the rights he purportedly acquired as part of any of these Voting Agreements.

50. On March 31, 2016, Khesin, through his counsel, claimed that he had acquired over 50% of the voting stock of the Company and had exercised his majority control to terminate the Board of Directors.

51. Khesin also issued a press release in which he asserted that he would be appointing a new Board of Directors.

52. Undersigned counsel reached out to Khesin's counsel, Ms. Schindler, to inform her that, whether or not the bylaws of the Company allowed Khesin to attempt to exercise control, Khesin had clearly violated federal securities law and his alleged termination of the Board was unlawful.

53. Undersigned counsel provided to Khesin's counsel the direct legal authority pursuant to the Williams Act, addressed below, that clearly governed Khesin's misconduct and invalidated his purported termination of the Board.

54. Despite repeated efforts to contact Khesin's lawyer to discuss these legal issues, as of the time of the filing of this Cross-Claim, Ms. Schindler has not presented any authority to justify Khesin's conduct under the federal securities laws.

55. On the evening of March 31, Khesin and the former head of the Company's Information Technology ("IT"), assisted by Byron Owens ("Owens") from Castle Palms Consulting, the IT consultant for the Company, went to the offices of DS Healthcare in Pompano

Beach and took physical control of the Company offices and warehouse as well as full control over all information systems.

56. Khesin had the locks and passcodes of the Company changed and locked out the CEO, CFO and other key associates of the Company.

57. Owens changed the computer passcodes and shut down CEO and CFO access to their email and the computer database.

58. Undersigned counsel immediately contacted the IT consultant to inform him that he was engaging in unlawful conduct.

59. In response, Owens claimed that he and his company were relying on Ms. Schindler's termination of the Board and so-called counting of the ballots to turn over control of the Company to Khesin.

60. Owens and his company refused to cease and desist from engaging in their unlawful conduct or to provide the CEO and CFO with access to emails or the Company's computer database.

61. Even more remarkable, and a clear indication of Khesin's intent to learn all that he could about the allegations of his fraudulent conduct that had been reported to the SEC, Khesin invaded privileged emails between undersigned counsel, and the Company's other outside corporate and SEC counsel.

62. At 2:40 am EST on April 1, 2016, Khesin sent one email to undersigned counsel, attaching the privileged emails that he had taken from the Company's database, and a separate email to the Company's outside corporate counsel, also attaching a privileged email that he took from the database.

63. Subsequently, Khesin issued a press release in which he attached another privileged email from the Company's corporate counsel to the Company's CEO and CFO, making fraudulent claims and defamatory statements about Ms. Barch-Niles, Audit Committee Chairman and Board Member Michael Pope and outside corporate counsel.

64. Despite repeated demands that Khesin cease and desist the unlawful hacking and control of the Company's information systems, and use and public disclosure of privileged communications, Khesin will not stop.

65. In response to Khesin's public disclosure of privileged communications, the Company was forced to issue its own press release on April 4, 2016.

66. In response to that press release, Khesin claimed that he was suspending Ms. Barch-Niles as the CEO of the Company.

67. Thus, Khesin unlawfully sought a total takeover of DS Healthcare.

68. Furthermore, Khesin continued to slander management and the Board of Directors to employees and investors and has interfered at a most critical time with the Company's obligation to complete its required annual Form 10-k and quarterly Form 10-Q securities filings. On April 3, 2016, Mr. Brockelman resigned as the Company's Chief Financial Officer.

69. Khesin's actions have severely interfered with DS Healthcare's Board and management's ability to properly run the Company.

70. No public company can continue to operate under these circumstances and this Court should enter appropriate injunctive relief to protect the Company, its management and its shareholders from Khesin, as set forth below.

## COUNT I
## (DECLARATORY JUDGMENT)

71.  DS Healthcare hereby incorporates by reference paragraphs 1 through 70 as if more fully set forth herein.

72.  The Williams Act, 15 U.S.C. § 78n, and the rules promulgated by the SEC pursuant to that Act, set forth the requirements for the solicitation of proxies of a public company.

73.  Federal law requires a solicitor of proxies to file a proxy statement containing disclosures of all material facts.

74.  In particular, the Williams Act prevents a change in a majority of the Board of Directors of a public company unless such change has been made at a properly noticed shareholders' meeting to afford the shareholders the opportunity to be heard or unless a required period of time has passed after the SEC has had the opportunity to review an information proxy statement.

75.  Khesin's actions in claiming that he had purchased a majority voting interest in the Company and that he had the authority to terminate the existing Board, install a new Board and take control of the management of the Company is in direct contravention of the Williams Act and/or Florida law.

76.  Khesin did not purchase the shares required to obtain a majority voting interest in the Company.

77.  Khesin failed to fully make the disclosures required by Section 13(d)(1) of the Exchange Act.

78.  Khesin failed to file a proxy statement before accumulating these shares.

79. Thus, Khesin's actions have violated the Exchange Act, the Williams Act and Florida law.

80. Khesin only secured his purported majority interest by engaging in transactions with the very people and entities that are the subject of the securities fraud reported to the SEC based on the Audit Committee's investigation.

81. Khesin's reported purchases total 2,554,000 shares, which included individuals and entities identified as being involved in Khesin's scheme.

82. As Khesin's Section 13(d) filing reports 22,148,675 outstanding shares of Company stock, subtracting the reported 2,544,000 shares from his alleged ownership reduces his alleged total shares to 9,920,157, less than a majority interest.

83. Khesin used his alleged majority control of DS Healthcare to claim a right to terminate the Company's Board of Directors and its CEO.

84. Khesin used the termination letter from his counsel to persuade Owens and this company that they had the authority to seize the Company's information systems from Company management.

85. Khesin relied on his so-called majority interest to threaten employees and repeatedly issue press releases in the name of DS Healthcare, attacking the Board and senior management.

86. Khesin also claimed to have appointed a new Board on April 4, 2016.

87. Khesin's entire takeover effort was supported by his blatant violation of the Exchange Act, the Williams Act and Florida law.

Fox Rothschild LLP

88.     Khesin's misconduct has caused serious damage to the Company that must be remedied by this Court's equitable power; the Company has no adequate remedy at law and will suffer direct, immediate, and substantial irreparable harm without action by this Court.

89.     Khesin's unlawful actions have caused complete uncertainty within the Company, its shareholders, and the public at large as to whether a properly functioning Board can fulfill its duties at this time.

90.     There is an actual, present and justiciable controversy between Defendant/Cross-Claimant DS Healthcare and Defendant/Cross-Defendant Khesin regarding the foregoing issues.

WHEREFORE, Defendant/Cross-Claimant DS Healthcare respectfully requests that this court enter a declaratory judgment determining that Khesin does not have a majority voting interest in the Company, that his actions have violated Federal and State corporate and securities laws, and enter a temporary restraining order, and preliminary and permanent injunction as follows:

A.      That invalidates the termination letter and precludes Khesin from exercising the shares he allegedly accumulated until appropriate discovery can be taken and the parties and the Court can determine which if any of the newly accumulated shares are lawfully possessed by Khesin.

B.      That Khesin leave and remain away from the Company premises and to return all passwords, locks and access information to senior management.

C.      That Khesin, and the IT consultant who assisted him, return full administrative access to the information systems to senior management.

Further, this Court should appoint a Temporary Independent Corporate Monitor to perform the Company's Board function at this time.

        Respectfully submitted,

        **FOX ROTHSCHILD LLP**
        *Counsel for DS Healthcare Group, Inc.*
        One Biscayne Tower, Suite 2750
        2 S. Biscayne Blvd.
        Miami, Florida 33131
        Telephone: (305) 442-6547
        Facsimile:  (305) 442-6541

By:   *s/Joseph A. DeMaria*
        **Joseph A. DeMaria, B.C.S.**
        Florida Bar No. 764711
        Email: jdemaria@foxrothschild.com
               mmiller-hayle@foxrothschild.com

and

        **Ernest Badway**
        Fox Rothschild LLP
        100 Park Avenue, Suite 1500
        New York, NY, 10017
        Telephone: (212) 878-7986
        Facsimile:  (212) 692-0940

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 12, 2016**, I electronically filed the foregoing Cross-Claim with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        *s/Joseph A. DeMaria*
        Joseph A. DeMaria

**SERVICE LIST**
**(CASE NO. 16-CV-60661- DIMITROULEAS/SNOW)**

*Via CM/ECF*
**LAURENCE ROSEN, ESQ.**
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

*Via CM/ECF*
**FRANK F. OWEN, ESQ.**
Frank F. Owen & Associates, P.A.
1091 Ibis Avenue
Miami Springs, Florida 33166-3213
Telephone: (954) 864-8000
Facsimile: (305) 602-3969
Email: frankfowen@yahoo.com

*Counsel for Castle Palms Networking and Byron Owen*

*Via CM/ECF*
**KEVIN C. KAPLAN, ESQ.**
**BENJAMIN H. BRODSKY, ESQ.**
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
Email: kkaplan@coffeyburlington.com
bbrodsky@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Defendant DS Healthcare, Inc.*

*Via CM/ECF*
**DANIEL C. MAZANEC, ESQ.**
**ROY TAUB, ESQ.**
**CHRISTINA GUZMAN, ESQ.**
Greenspoon Marder, P.A.
600 Brickell Avenue, Suite 3600
Miami, FL 33131
Telelphone: (305)789-2770
Facsimile: (305)537-3950
Email: Daniel.Mazanec@gmlaw.com
  Roy.Taub@gmlaw.com
  Christina.Guzman@gmlaw.com

*Counsel for Defendant Daniel Khesin*

Fox Rothschild LLP