UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-Civ-60661Dimitrouleas/Snow

PRASANT SHAH, individually and on
behalf of all others similarly situated,

    Plaintiffs,

vs.

DS HEALTHCARE GROUP, INC.,
DANIEL KHESIN, RENEE BARCHNILES,
DIANNE ROSENFELD, KARL
SWEIS, and MICHAEL POPE,

    Defendants.

_____/

**REPLY IN SUPPORT OF MOTION TO TERMINATE FOX ROTHSCHILD AND TO STRIKE VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant DS Healthcare Group, Inc. (the "Company"), by and through undersigned counsel, hereby replies in support of its motion for judicial termination of Fox Rothschild's representation of the Company and to strike or deny the Motion for Temporary Restraining Order and Preliminary Injunction purportedly filed on behalf of the Company (the "Motion," DE 18).

The unrebutted evidence presented at the hearing on the Motion was that Daniel Khesin has majority control over the Company, and that, pursuant to that control, Fox Rothschild has been terminated. Their motion for TRO/preliminary injunction is not authorized and must be denied as moot. Indeed, even under Fox Rothschild's unsupported version of the facts—in which some undefined portion of Daniel Khesin's voting shares were invalidly issued—he still has control! Finally, as of Friday, April 15, 2016, Mr. Khesin will have cured any possible issues with his voting control based on the Schedule 14A he filed on April 4, 2016. The will of the

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

shareholders must therefore be respected, and the termination of Fox Rothschild should be affirmed by the Court immediately. In sum, the Company submits that a judicial determination of Mr. Khesin's control is crucial to restoring the stability of the Company, protecting the shareholders' sizable investment in it, and allowing the Company to present its meritorious defenses in the pending lawsuit.

I.  **The evidence at the hearing was unrebutted that Mr. Khesin controls a majority of the voting shares of the Company.**

The only competent evidence in the record regarding the ownership of shares in the Company is contained in the Voting Agreements (Ex. 1) the Declarations of Shareholders (Ex. 5 and of record at DE 18-5 24, and 25), the Schedule 13D filed by Daniel Khesin (Ex. 2), and Mr. Khesin's unrebutted testimony (presented in Court and through his own declaration, DE 23) regarding his share ownership. That unrebutted evidence shows that Mr. Khesin validly controls 12,467,157 of the 22,148,675 outstanding shares of the Company, representing approximately 56% of the voting shares.

At the hearing, Fox Rothschild—ostensibly without a client other than a rogue board member and an ousted CEO—presented no documentary evidence to rebut these facts. Instead, without any competent impeachment, Fox Rothschild challenged the holdings of five shareholders: Gregory D. Ross (1,075,000), DS Healthcare HK Limited (800,000), White Stone Group, Inc. (354,000), Cheung Fei Fu (200,000), and Alexander Khesin (15,000). Yet they failed to adduce any testimony through that cross-examination (or produce a page of documentary evidence) that any these shares were invalidly issued. The record on these points is as follows:

- As Mr. Ross' own testimony established, he purchased approximately 400,000 shares on the open market, and he purchased the balance of his shares from the Company for $800,000 of cash consideration. This evidence went unrebutted.

- Similarly, the evidence was unrebutted that the shares held by White Stone Group, Inc. were validly issued over five years ago at the time the company went public based on services provided by White Stone's principal, Abner Silva.

- As to Alexander Khesin, the testimony was also unrebutted that he purchased the shares from an employee of the Company for cash consideration.

- Finally, as to DS Healthcare HK Limited and Cheng Fei Fu, the testimony was that these shares were issued as a result of valid consulting agreements. Fox Rothschild's own witness, Mr. Pope, acknowledged that there were discussions among the board regarding the issuance of these shares. He contended that, because a board resolution was not passed approving their issuance, they are somehow invalid. Yet nowhere in the bylaws is there a requirement that a board resolution be issued before a share issuance becomes valid; nor did Fox Rothschild adduce any testimony on that point.[1]

---

[1] It is also worth noting that the evidence was unrebutted that Mr. Khesin had this authority under his Employment Agreement (Ex. 6).

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

## II. Even under Fox Rothschild's version of the facts, Mr. Khesin still has control.

Perhaps most fundamentally, even assuming Fox Rothschild had shown that these shares were invalidly issued (which they did not), Mr. Khesin still has majority control! Subtracting out the shares of Mr. Ross, White Stone, Alexander Khesin, DS Healthcare HK Limited, and Cheng Fei Fu—totaling 2,444,000—from the amount of voting shares controlled by Mr. Khesin and the total amount of outstanding shares yields the follow calculation:

$$(12{,}467{,}157^2 - 2{,}444{,}000^3) / (22{,}148{,}675^4 - 2{,}444{,}000^2) = 50.9\%$$

Nor can Fox Rothschild manipulate this math by subtracting the 2,444,000 from the number of shares controlled by Mr. Khesin (i.e., the numerator) but not subtracting the 2,444,000 shares from the outstanding number of shares of the Company (but not the denominator).[5] That is, the shares cannot be invalid for the purposes of Mr. Khesin's voting control but still be valid for purposes of measuring the outstanding shares of the Company. Beyond being mandated by common sense, this conclusion is also mandated by the Company's By-Laws, in which a valid quorum of shareholder votes is determined based on "[a] majority of the shares **entitled to vote**." By-Laws at § 3.04(1).

## III. Starting on Friday, April 15, 2016, Mr. Khesin will undeniably have satisfied the proxy solicitation rules.

At the hearing, both Mr. Pope and Ms. Barch-Niles acknowledged in their testimony that if Mr. Khesin has control of the Company by virtue of the shareholders' overwhelming vote of

---

[2] The number of shares the evidence shows Mr. Khesin controls.

[3] The number of shares challenged by the rogue board.

[4] The number of outstanding shares of the Company.

[5] Fox Rothschild uses this improper method of calculation in its unauthorized Cross-Claim. (DE 22 ¶ 83.)

confidence in him, then he has the authority to fire them and terminate Fox Rothschild. Moreover, the evidence was unrebutted that, as of Friday, April 15, 2016, Mr. Khesin's Schedule 14A (filed April 4, 2016) would vest, therefore curing any violation of the proxy solicitation rules. The cases cited by the Company in its Motion uniformly hold that there is no valid challenge to a shareholder vote when any alleged proxy violations are cured. And the rogue board of directors has presented no authority to the contrary. This, too, militates in favor of a judicial determination of control in Mr. Khesin and the consequent termination of Fox Rothschild as purported Company counsel. In event the Court does not rule on the motion by Friday, the Company intends to submit documentation to the Court showing that the shareholders have reaffirmed their support for Mr. Khesin upon the vesting of the Schedule 14A proxy statement.

Respectfully submitted,

COFFEY BURLINGTON

By: *s/ Benjamin H. Brodsky*
Kevin C. Kaplan
Florida Bar No. 933848
kkaplan@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
Benjamin H. Brodsky
Florida Bar No. 73748
bbrodsky@coffeyburlington.com
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Defendant DS Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2016 I served the foregoing document by CM/ECF to all counsel of record.

By: *s/ Benjamin H. Brodsky*
Benjamin H. Brodsky