UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-60661-CIV-DIMITROULEAS

In re DS Healthcare Group, Inc.
Securities Litigation

_____ /

**MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   FACTS ........................................................................................................... 3

   A.    Liability ................................................................................................. 3

   B.    Procedural history ................................................................................ 4

       1.    Pleadings ......................................................................................... 4

       2.    Class Certification ......................................................................... 6

III.   THE COURT SHOULD FINALLY CERTIFY THE CLASS ........................... 6

IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED ......................... 7

   A.    Standards .............................................................................................. 7

   B.    The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors ............ 8

       1.    Likelihood of success at trial ........................................................ 8

       2.    Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness ............................... 11

       3.    The Complexity, Expense, and Likely Duration of Continued Litigation ............... 12

       4.    The Reaction of the Class ............................................................. 13

       5.    The Stage of Proceedings ............................................................. 13

   C.    Negotiations were conducted at arm's length and the Settlement is not the result of fraud or collusion ..................................................... 14

   D.    The Recommendation of Experienced Counsel Favors Approval of the Settlement ................................................................................... 15

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ....................... 15

VI.   CONCLUSION ............................................................................................ 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
 211 F.R.D. 457 (S.D. Fla. 2002) ..................................................................7

*Behrens v. Wometco Enterprises, Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988) .............................................................8, 13

*Bennett v. Behring Corp.*,
 737 F.2d 982 (11th Cir. 1984) ................................................................7, 8

*Bennett v. Behring Corp.*,
 96 F.R.D. 343 (S.D. Fla. 1982) ..................................................................7

*Canupp v. Sheldon*,
 No. 204-CV-260-FTM-99DNF, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009).........8

*Cifuentes v. Regions Bank*,
 No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ....................8

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ...............................................................8, 15

*Figueroa v. Sharper Image Corp.*,
 517 F. Supp. 2d 1292 (S.D. Fla. 2007)............................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
 611 F. Supp. 1396 (E.D.N.Y. 1985)..............................................................12

*In re Checking Account Overdraft Litig.*,
 830 F. Supp. 2d 1330 (S.D. Fla. 2011)......................................................11, 15

*In re Chicken Antitrust Litig. Am. Poultry*,
 669 F.2d 228 (5th Cir. 1982) .....................................................................15

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) .....................................................................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011)..................................................................12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
 No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................12

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012)..................................................................14

*In re Oracle Sec. Litig.*,
 No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994)........................15

*In re Smith*,
 926 F.2d 1027 (11th Cir. 1991) ...............................................................8, 15

*In re Sunbeam Sec. Litig.*,

ii

176 F. Supp. 2d 1323 (S.D. Fla. 2001) .................................................................................. 9, 14

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ................................................................................................ 7

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ................................................................................. 11

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................................ 6

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992) ................................................................................ 12, 13

*Saccoccio v. JPMorgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................................ 8

*Strube v. American Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. Feb. 8, 2005) ............................................................................ 15

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................. 12

*Warren v. City of Tampa*,
  693 F. Supp. 1051 (M.D. Fla. 1988) ...................................................................................... 7

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .............................. 14

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194 (11th Cir. 2001) .............................................................................................. 9

*Zuckerman v. Smart Choice Auto Group, Inc.*,
  No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) .......................... 10

**Other Authorities**

Newberg on Class Actions,
  § 11.51 at 11.88 (4th ed. 1992) ............................................................................................ 14

Svetlana Starykh and Stefan Boettrich,
  *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review*  (NERA Economic
  Consulting, 2016) ................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 8

Fed. R. Civ. P. 23(e) ............................................................................................................... 1, 7

## MOTION

Lead Plaintiffs Mark Baldwin and Joseph Terranova (collectively, "Plaintiffs"), upon the accompanying Memorandum of Law and the accompanying Declaration of Laurence M. Rosen In Support of Final Approval of Class Action Settlement and An Award of Attorneys' Fees and Reimbursement of Expenses ("Rosen Dec.") and the exhibits attached thereto, hereby move the Court pursuant to Fed. R. Civ. P. 23(e) for final approval of the Settlement of this action for $2,100,000 and the Plan of Allocation. The Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

The Proposed Judgment will be submitted with Plaintiffs' reply papers, which will be after the deadline for opting out of Settlement.

## MEMORANDUM OF LAW

## I.    PRELIMINARY STATEMENT

The Settlement is an exceptional result for Class members despite serious issues Plaintiffs would face in proving scienter and loss causation, and in collecting any judgment they might obtain. The Settlement was reached only after Plaintiffs, among other things: (a) conducted an extensive investigation of claims against Defendants DS Healthcare Group, Inc. ("DS Healthcare" or the "Company"), Daniel Khesin, Renee Barch-Niles, Dianne Rosenfeld, Karl Sweis, and Michael Pope (collectively, "Defendants"), including interviews with former DS Healthcare employees; (b) drafted and filed the initial complaint, amended complaint and second amended complaint; (c) consulted with a damages expert; (d) prepared a mediation statement and participated in an all-day mediation with nationally recognized mediator Hunter Hughes, Esq.; (e) extensively negotiated the specific terms of the Settlement to protect Class Members' recovery; and (f) drafted the Stipulation of Settlement, related notices to the Class and proposed

forms of order. *See* Rosen Dec. ¶ 8.

The Settlement recovers approximately 26.0% of Plaintiffs' best-case scenario of damages, *i.e.*, assuming that Plaintiffs prevail on all claims at trial and appeals, and that the cumulative decline of DS Healthcare's stock price following all of the corrective disclosures is attributed entirely to Defendants' alleged fraud. *See* Rosen Dec. ¶ 7. This percentage of recovery is almost 150% of the median percentage recovery for similar securities class action settlements. *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* 36 (NERA Economic Consulting, 2016) (in cases with estimated damages of less than $20 million, median settlement between 1996-2016 returned 18.4% of estimated damages) (attached as Exhibit 3 to the Rosen Dec.). Thus, the sheer percentage recovery of the Settlement strongly supports approval.

But that is not all. Pursuant to the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, over 8,600 notice and claim packets were mailed to potential Settlement Class Members and nominees. *See* Declaration of Josephine Bravata Concerning The Mailing of The Notice Of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form ("Bravata Dec.") ¶ 6, attached as Exhibit 1 to the Rosen Dec. To date, no class members have objected to the settlement, and only three class members – who collectively bought 2,250 DS Healthcare shares during the Class Period – have opted out. *Id*. at ¶ 12-13. The deadline to seek exclusion was August 15, 2017 and to object is September 14, 2017. *Id*.

The Settlement results from arm's length negotiations among the Settling Parties that began with an all-day mediation on October 17, 2016 with nationally recognized mediator Hunter Hughes, Esq. and continued with months of informal settlement negotiations, culminating

in an excellent Settlement that provides a $2.1 million cash payment for the benefit of the Class. *See* Rosen Dec. ¶¶ 6, 8-11.

For these reasons and those set forth below, Plaintiffs respectfully submit that the Court should approve the Settlement because it is fair, reasonable and adequate.

## II.    FACTS

### A.    Liability

DS Healthcare is a beauty products manufacturer. Its stock was traded on the NASDAQ until trading was halted on April 4, 2016. It has since been delisted. ¶24.[1] It is financially troubled, with its auditors reporting that there was substantial doubt about its ability to continue as a going concern in its 2014, 2015, and 2016 annual financial statements. *See* DS Healthcare Annual Reports for the years ended December 31, 2014, December 31, 2015, and December 31, 2016, each filed on Form 10-K with the SEC (the "2014, 2015 and 2016 10-Ks"); 2014 10-K at 16; 2015 10-K at 7; 2016 10-K at 7.

During the Class Period, DS Healthcare's financial statements – signed by Defendants – contained significant misstatements. First, every single financial statement DS Healthcare filed between its Q1 2014 and Q3 2015 quarterly reports overstated one or more key DS Healthcare financial metrics, including revenue, net income, and shareholders' equity. ¶¶37-56. Second, DS Healthcare's 2014 10-K omitted to disclose fourteen material internal control deficiencies, including its CEO's unauthorized payments to himself and unauthorized issuances of millions of shares of stock. ¶¶68-90. And third, DS Healthcare omitted to disclose that certain transactions between it and one of its directors were related party transactions.  ¶104.

Class members suffered significant damages when the truth was revealed to the market in

---

[1] Citations to "¶" are to paragraphs of the Second Amended Complaint.

a series of partial corrective disclosures.  On March 23, 2016, the Company disclosed that it was *restating* its financial statements for the two fiscal quarters ended June 30, 2015 and September 30, 2015 due to errors, *terminating* Defendant Khesin as an executive officer and employee of the Company for cause, and *removing* Defendant Khesin as Chairman and as a member of the Board of Directors for cause. ¶109. On this news, shares of the Company fell over 35% from its previous closing price to close at $0.86 per share. ¶111. On March 28, 2016, the Company announced material preliminary restatement results. ¶112. On this news, shares of the Company fell over 11% from their previous closing price to close at $0.72 per share. ¶113. On April 4, 2016, NASDAQ halted trading and the price of DS Healthcare shares fell when it resumed trading on March 20, 2017. ¶114.

**B.    Procedural history**

**1.    Pleadings**

This action was filed in March 2016. D.E. 1. Within a week, DS Healthcare's then-management filed a motion, purporting to speak on DS Healthcare's behalf, to enjoin its once and future CEO, Daniel Khesin, from participating in corporate affairs. D.E. 6, 7. Khesin responded, also purporting to speak on DS Healthcare's behalf, that then-management had usurped him, and sought to terminate both DS Healthcare's then-management's motion and then-management. D.E. 18, 19. Khesin argued that he was entitled to terminate then-management because he had proxies which, combined with his shares, accounted for more than 50% of DS Healthcare's shares. The Court, while expressing dismay at Khesin's tactics, agreed with him, and allowed him to terminate then-management. D.E. 31.

As this corporate drama unfolded, the securities fraud aspect of this case continued as well. In April 2016, an Amended Complaint was filed alleging violations of federal securities

laws against Defendants. D.E. 28. On July 7, 2016, the Court appointed Plaintiffs Mark Baldwin and Joseph Terranova as Lead Plaintiffs. D.E. 51.

Struggles between Khesin and DS Healthcare's now-former management, who were all defendants, created a risk that this litigation would quickly spiral out of control. Rosen Dec. ¶ 9. Defendants had already engaged in highly unusual motion practice targeting each other; it was likely that they would do so again. The Parties were concerned that Defendants would consume DS Healthcare's resources in their internecine struggles, leaving no money to pay for any settlement or judgment. *Id.* Therefore, the Parties agreed to attend an early mediation to attempt a resolution. At the Parties' request, the Court delayed filing of a second-amended complaint and responses thereto so the Parties could participate in mediation. D.E. 54.

A week before the mediation, DS Healthcare filed its restated financial statements, which allowed Plaintiffs to determine the amount of the overstatement as well as the specific internal control deficiencies which had led to the restatement. *See* DS Healthcare Amended Quarterly Report for the period ended March 31, 2015, filed with the SEC on Form 10-Q/A ("1Q15 10-Q/A"), at 29.  Before the mediation, Plaintiffs also conducted a further investigation of the Claims in this Action, in which Plaintiffs' investigator held substantive interviews with three former DS Healthcare employees and Plaintiffs spoke at length with the plaintiffs' counsel in an action styled *Microcap Headlines, Inc. v. DS Healthcare Group, Inc.*, Case No. 2015-030046-CA, filed in the Circuit Court of Miami-Dade County.  Rosen Dec. ¶ 8.

At the all-day mediation, through zealous and hard-fought negotiations, the parties were able to agree on the dollar amount of a settlement. But the parties were unable to agree on certain other critical terms through which Plaintiffs sought to maximize the recovery for, and minimize the risks borne by, the Class. Rosen Dec. ¶ 11.

With no assurances of a settlement, Plaintiffs pressed on with the case. On November 2, 2016, Plaintiffs filed the Second Amended Complaint alleging violations of federal securities laws against Defendants. D.E. 60. When Defendants answered, D.E. 63, 64, the Parties negotiated and filed a discovery plan. But before beginning expensive full-fledged discovery, the parties prioritized seeing the settlement process through either to a settlement or an impasse. Fortunately, after hard-fought negotiations, which lasted for more than six months, the parties were able to reach agreement on these critical terms that had stymied the mediation. Rosen Dec. ¶ 11.

### 2.    Class Certification

On June 1, 2017, the Court preliminarily certified the following class:

> [A]ll Persons (including, without limitation, their beneficiaries) who purchased the securities of DS Healthcare on the NASDAQ during the period from May 15, 2014 through April 3, 2016, inclusive, except that excluded from the Settlement Class are all: (i) Defendants; (ii) former officers, directors, and consultants of DS Healthcare and of any other Released Parties; (iii) DS Healthcare HK Limited; (iv) parents, spouses, or children living in the household of any person excluded under (i) or (ii) above; (v) any legal entity more than 50% owned by any person under (i) and (ii) above; and (vi) the heirs, successors and assigns of any person excluded under (i) and (ii) above.

D.E. 76.

## III.    THE COURT SHOULD FINALLY CERTIFY THE CLASS

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged federal securities laws violations. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[P]laintiffs to pool claims which would be uneconomical to litigate individually … [M]ost of the [P]laintiffs would have no realistic day in

court if a class action were not available"). As noted, the Court preliminarily approved a Settlement Class on behalf of investors who purchased DS Healthcare securities on the NASDAQ from May 15, 2014 through April 3, 2016, with certain exclusions. Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Class.

## IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A.    Standards

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[Settlements of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). As the court in *U.S. Oil & Gas* noted:

> Complex litigation - like the instant [class action] case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotations omitted). "The Court [must] make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988). Approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at

493; *Bennett*, 737 F.2d at 987.

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the so-called *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery, (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *accord Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *4 (S.D. Fla. Mar. 20, 2014).

Finally, in evaluating a settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

**B.      The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors**

**1.      Likelihood of success at trial**

The first *Bennett* factor is "the likelihood of success at trial." *Bennett,* 737 F.2d at 986. This is the most important factor and is weighed against the relief proposed by the settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). This factor favors settlement so long as there is substantial doubt about the Class's ability to prevail at trial. *See Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (mere fact of potential loss at trial weighed in favor of settlement); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 540 (S.D. Fla. 1988) (approving class action settlement because "[i]f the

8

plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk").

Plaintiffs must prove every element of their cause of action and negate every affirmative defense to recover. Moreover, to be awarded to their maximum damages, the figure this brief uses as its reference point, Plaintiffs must show that all of the losses following revelation of Defendants' fraud were caused by that revelation, rather than other factors. Here, proving scienter, loss causation, and damages would be challenging.

Securities fraud actions are difficult to prove at trial. Plaintiffs must convince the jury that the Defendants were not merely negligent, even "inexcusably" so, but made statements that had a "danger of misleading buyers [] which is either known to the defendant or is so obvious that the defendant must have been aware in practice." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). This is difficult to prove to the jury's satisfaction. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S.D. Fla. 2001).

Defendants would make some compelling arguments to the jury. Among other things, Defendants would point out that Daniel Khesin, who was only 35 years old in April 2015, served as DS Healthcare's Chief Executive Officer **and** Chief Financial Officer **and** as Chairman of its board. 2014 10-K, at 26. They would note that Khesin held his positions because he founded DS Healthcare, but claim he had too little experience with the demands of public company executives to perform his multiple functions adequately. They would argue that the errors in DS Healthcare's financial statements resulted not from an intentional or reckless effort to mislead, but from Khesin's inexperience and excessive responsibilities. There is a substantial risk that the jury would agree with them.

And on loss causation and damages, Defendants would also argue that some or all of the

stock price collapse following corrective disclosures resulted not from disclosure of the fraud alleged in the Complaint but from the public airing of DS Healthcare's spectacular corporate governance failures. The announcement of restatement affecting at least two quarters of financial statements was obviously a serious concern. But so was the announcement, made in the same press release, that DS Healthcare was removing its CEO for breaching his fiduciary duties. Plaintiffs would face a significant challenge in disaggregating the portion of damages attributed to the former from that attributable to the latter – and every dollar of loss that is attributed to corporate mismanagement reduces recoverable damages. Moreover, Plaintiffs and Defendants would present competing experts on the issue, Rosen Dec. ¶ 2, and it is notoriously hard to predict whose expert the jury would believe. *See, e.g., Zuckerman v. Smart Choice Auto Group, Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions.").

Finally, even if Plaintiffs were successful at trial, they likely would not be able to collect a judgment. DS Healthcare's auditors delivered going concern warnings in each of DS Healthcare's 2014, 2015 and 2016 annual financial statements. *See* 2014 10-K at 16; 2015 10-K at 7; 2016 10-K at 7. DS Healthcare lost $4.2 million in cash from operating activities in 2016, and as of December 31, 2016, it held only $0.3 million in cash. *See* 2016 10-K at 22.  With this securities class action pending, it would have been impossible to secure the cash it needed to survive. Accordingly, but for the settlement, DS Healthcare would have filed for bankruptcy during the pendency of this Action. Rosen Dec. ¶ 12.

DS Healthcare's sole applicable insurance policy has a limit of $5.0 million. It is a burning candle policy, meaning that it erodes as it pays out attorneys' fees. Rosen Dec. ¶ 5.  It

would have been quickly eroded in litigation, both because of the complexity of securities class actions and by the defendants' internecine struggles. Indeed, more than half the policy is being spent to settle this Action and related cases brought derivatively on behalf of DS Healthcare. Rosen Dec. ¶ 15.

This factor weighs in favor of approval.

> **2.    Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness**

The second and third factors, which are usually combined, require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). The Court must evaluate the settlement "in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal quotations omitted). Settlement, courts in this district emphasize, is compromise, and requires "an abandoning of highest hopes." *Id.* (internal quotations omitted).

As discussed above, Plaintiffs' damages expert concluded that their best case damages recovery is $8.1 million.  Rosen Dec. ¶ 7.  The settlement represents approximately 26% of the best case scenario, assuming Plaintiffs prevailed at trial on every single claim and on every single disclosure, and that the jury attributed 100% of the stock price decline to revelation of the alleged fraud. *Id.*  And even so, total damages ultimately paid out would be less than $8.1 million, because only class members who filed a claim would receive a payment. In any case, Defendants would have disputed Plaintiffs' damages estimates and, under their analysis, would have asserted Class-wide damages to much lower, perhaps zero. Under these circumstances, the Settlement – which returns almost 150% of the median settlement in cases of this size – is an excellent recovery. *See* Rosen Decl. Ex. 3.

Additionally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Thus, this factor strongly favors approval.

### 3.   The Complexity, Expense, and Likely Duration of Continued Litigation

"A securities case, by its very nature, is a complex animal." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Further, complex class actions are "notably difficult and notoriously uncertain." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted). The Court should also take into account the significant burden this case would impose on it should it go to trial. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). As the Court no doubt knows from its experience with the *Ocwen* class action, the burden would be considerable.

By negotiating low fee agreements and seeking only necessary work, Plaintiffs have kept expenses thus far to about $20,298.41. But in Class Counsel's experience, the remaining discovery and trial preparation would cost far more than this amount. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *8 (C.D. Cal. May 6, 2014) (in similar case where Rosen Law Firm was lead counsel, settled weeks before trial, class counsel sought reimbursement of litigation costs of about $420,000). As discussed above, this case had its share of complexity and expense. To take this case to trial, Plaintiffs would have had to retain a financial expert, who would issue reports and testify on market efficiency (for class certification), loss causation, and damages, as well as an accounting expert, at a cost Plaintiffs

estimate to be no less than $450,000. Rosen Dec. ¶¶ 3-4.  Defendants would also have retained

their own financial and accounting experts who would testify on the same subjects as Plaintiffs'

corresponding experts, substantially complicating this case.

This factor favors approval.

### 4.    The Reaction of the Class

The overwhelmingly positive reaction of class members to the proposed settlement is a

significant factor to be considered, and the absence of objections "is excellent evidence of the

settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's

Stores, Inc.*, No. 0014017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact

that no objections have been filed strongly favors approval of the settlement").

Over 8,600 notice claim packets were mailed to potential Class Members and nominees.

*See* Bravata Dec. ¶ 6. The Notice apprised Settlement Class Members of their right to object to

the Settlement, the Plan of Allocation, or to Class Counsel's application for attorneys' fees and

expenses, and the procedure to object or seek exclusion. *Id*., Ex. A. To date, there have been no

objections to the Settlement. *Id*. at ¶13. The deadline to object is September 14, 2017. *Id*. To

date, three Class Members, who collectively held a total of only 2,250 shares, have opted out of

the Settlement. *Id*. at ¶ 12; Exhibit D. The deadline to opt out was August 15, 2017. *Id*.  The lack

of any objections and the tiny number of shares requesting exclusion from the Class demonstrate

Class members' overwhelming support for the Settlement.

### 5.    The Stage of Proceedings

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had

sufficient information to evaluate the case and to determine the adequacy of the settlement.

*Behrens*, 118 F.R.D. at 544. The absence of formal discovery is no bar to approval. *In re*

*Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("we are not compelled to hold that formal discovery was a necessary ticket to the bargaining table."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *13 (D.N.J. Nov. 10, 2016) ("Courts in this Circuit frequently approve class action settlement reached without formal discovery."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("formal discovery need not necessarily have been undertaken yet by the parties [in order to approve a settlement]");

Here, Plaintiffs have a strong understanding of the strengths and weaknesses of their case, and thus have an ample basis for making an informed judgment that the settlement is fair and reasonable.  At the time the settlement was reached, Plaintiffs also had a solid grasp of the factual merits of the case. Plaintiffs had conducted an extensive investigation in preparing three complaints and consulted with a damages expert. Additionally, Plaintiffs attended an all-day mediation session with a well-regarded mediator. Finally, before the mediation, DS Healthcare filed its restated financial statements, providing specific details of the fraud including the precise dollar amounts that its financial statements were misstated during the Class Period. *See* Rosen Dec. ¶ 8; 1Q15 10-Q/A at 8-9.

Thus, this factor favors approval. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable").

### C.    Negotiations were conducted at arm's length and the Settlement is not the result of fraud or collusion

"[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg on Class Actions, § 11.51 at 11.88 (4th ed. 1992). There is no hint of collusion in this settlement. Indeed,

even after the Parties agreed to the dollar amount of the Settlement at the all-day mediation, attended by all parties, the parties still engaged in six months of hard-fought negotiations. Rosen Dec. ¶¶ 6, 8, 11. These negotiations were at arm's length at all times. Thus, there was no fraud or collusion, and negotiations were at arm's length; the Court should approve the settlement. *Checking Account*, 830 F. Supp. 2d at 1345.

### D.   The Recommendation of Experienced Counsel Favors Approval of the Settlement

The Court is entitled to rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Id*. at 539 (quoting *Cotton*, 559 F.2d at 1330); *accord In re Smith*, 926 F.2d at 1028; *Strube,* 226 F.R.D. at 703. Class Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id*. at 703. Indeed, Class Counsel have collectively served as lead or co-lead counsel in over 70 successful securities class action, believe the Settlement is fair-reasonable, and adequate. Rosen Dec. ¶ 13.

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it "is fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation was formulated with the aid of an experienced consultant. The Plan of Allocation was designed to reimburse class members to the extent of their damages under the securities laws. Rosen Dec. ¶ 14. *See also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable"). After taking into account

the timing of Class Members' stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Cash Settlement Amount is distributed on a pro rata basis depending on Class Members' recognized losses. Rosen Dec. ¶ 14. Accordingly, the Plan of Allocation is fair and adequate and should be approved.

## VI.   CONCLUSION

For the reasons stated herein and in the Rosen Declaration, Plaintiffs respectfully request that the Court finally approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate and enter the proposed Judgment.


Dated: August 31, 2017                                     Respectfully submitted,

                                                           **THE ROSEN LAW FIRM, P.A.**

                                                           By:     /s/ Laurence Rosen
                                                           Laurence M. Rosen
                                                           Fla. Bar No. 0182877
                                                           275 Madison Avenue, 34th Floor
                                                           New York, New York 10016
                                                           Phone: 212-686-1060
                                                           Fax: 212-202-3827
                                                           Email: lrosen@rosenlegal.com

                                                           *Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, August 31, 2017, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence Rosen</u>