**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-60661-CIV-DIMITROULEAS

In re DS Healthcare Group, Inc.
Securities Litigation

_____ /

**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF**
**EXPENSES; MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.   THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ......................................................................................................... 2

   A.   The "Percentage of the Fund" Method is the Appropriate Basis for Awarding Attorneys' Fees in the Eleventh Circuit .......................................................... 2

   B.   The Requested Fee is Reasonable Under the *Camden* factors ....................... 3

      1.   Awards in Similar Cases .............................................................................. 4

      2.   Time and Labor Required ............................................................................ 6

      3.   The Novelty and Difficulty of the Questions Involved ................................ 8

      4.   The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys ................................. 10

      5.   Preclusion of Other Employment ............................................................... 12

      6.   The Customary and Contingent Nature of the Fee ..................................... 12

      7.   The Results Obtained ................................................................................. 14

      8.   The "Undesirability" of the Case .............................................................. 14

      9.   The Time Limitations Imposed by the Client or the Circumstances ........... 15

   C.   Important Public Policy Considerations Support The Requested Fees ....................... 15

   D.   Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ............................................................................ 16

   E.   Payments to Plaintiffs ............................................................................... 17

III.   CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................ 16

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) .................................................................................................. 16

*Aranaz v. Catalyst Pharmaceutical Partners Inc.*,
   No. 13–cv–23878–UU, D.E. 153 (S.D. Fla. March 16, 2015) ...................................... 5

*Atkinson v. Wal–Mart Stores, Inc.*,
   2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) .............................................................. 6

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................ 7, 12, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...................................................................................................... 3

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .................................................................................... 3, 4

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   No. 1:00-CV-2838-WBH, 2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ............... 4, 9

*Cifuentes v. Regions Bank*,
   No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ...................... 17

*City of Los Angeles v. Bankrate, Inc.*,
   No. 14-CV-81323 (S.D. Fla. Feb. 6, 2017) ................................................................... 5

*City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*,
   No. 08-cv-23317-JAL, D.E. 201 (S.D. Fla. July 17, 2013) ........................................... 5

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   No. 1:04-CV-3066-JEC, 2008 WL 11234103 (N.D. Ga. Mar. 4, 2008) ...................... 7

*Dance v. Levitt Corporation*,
   No. 08-cv-60111-DLG, D.E. 151 (S.D. Fla. Sep. 28, 2011) ........................................ 5

*David v. Am. Suzuki Motor Corp.*,
   No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .............................. 10

*Dowdell v. City of Apopka*,
   698 F.2d 1181 (11th Cir. 1983) ................................................................................... 16

*Fuller v. Imperial Holdings*,
   No. 11-cv-81184-KAM, D.E. 95 (S.D. Fla. Dec. 16, 2013) ......................................... 5

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
   927 F. Supp. 2d 88 (S.D.N.Y. 2013) .......................................................................... 14

*Gutter v. E.I. DuPont De Nemours & Co.*,

No. 1:95–cv–02152–ASG, D.E. 626 (S.D.Fla. May 30, 2003) ................................................. 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent ................. 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................................... 14

*Hosier v. Mattress Firm, Inc.*,
   2012 WL 2813960 (M.D. Fla. June 8, 2012) ............................................................................ 6

*Howard v. Chanticleer Holdings, Inc.*,
   No. 12- cv-81123-JIC, D.E. 74 (S.D. Fla. August 14, 2014) ................................................. 5, 11

*In re Altisource Portfolio Solutions, S.A. Sec. Litig.*,
   No. 14-CV-81156-WPD (S.D. Fla. May 30, 2017) .................................................................. 4

*In re AOL Time Warner, Inc. Sec.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ................................. 4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................... 13

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................................ 3, 12, 17

*In re Digital Domain Media Group, Inc. Sec. Litig.*,
   No. 2:12-cv-14333, D.E. 116 (S.D. Fla. April 10, 2017) .......................................................... 4

*In re Friedman's, Inc. Sec. Litig.*,
   No. 1:03-CV-3475WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) .................................... 17

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ....................................................................................... 4

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................. 4

*In re Lease Oil Antitrust Litig.* (No. II),
   186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................................. 4

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..................................................... 7

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ....................................... 4

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
   251 F.R.D. 656 (D. Utah 2008) .............................................................................................. 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................... 6

*In re Pfizer Inc. Sec. Litig.*,
   No. 04-CV-9866-LTS-HBP, 2014 WL 3291230 (S.D.N.Y. July 8, 2014),
   *vacated on other grounds*, 819 F.3d 642 (2d Cir. 2016) .......................................................... 9

*In re Puda Coal Sec. Inc., Litig.*,

30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................................................... 10

*In re Sterling Fin. Corp. Sec. Class Action*,
   No. CIV.A. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ......................................... 8

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................................. 8, 11

*In re Terazosin Hydrochloride Antitrust Litig.*,
   No. l:99–md–01317–PAS, Doc. No. 1557 (S.D.Fla. Apr. 19, 2005) ....................................... 6

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...................................... 6

*Ingram v. The Coca-Cola Co*,
   200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................................... 7

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ....................................................................................... 8

*Miller v. Dyadic International, Inc.*,
   No. 07-cv-80948-WPD, D.E. 236 (S.D. Fla. July 28, 2010) ................................................... 5

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ............................................................................................................. 7

*Morefield v. NoteWorld, LLC*,
   2012 WL 1355573 (S.D. Ga. April 18, 2012) ......................................................................... 6

*Murdeshwar v. Searchmedia Holdings Ltd.*,
   No. 11-cv-20549, D.E. 103 (S.D. Fla. Apr. 24, 2012) ........................................................... 5

*Norman v. Hous. Auth. of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) .......................................................................................... 12

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
   No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ................................................. 7

*Perez v. Asurion Corp.*,
   No. 06-20734-CIV, 2007 WL 2591180 (S.D. Fla. Aug. 8, 2007) .......................................... 15

*Petrie v. Elec. Game Card, Inc.*,
   761 F.3d 959 (9th Cir. 2014) .............................................................................................. 13

*Pinto v. Princess Cruise Lines Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) .................................................................... 7, 12, 17

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ................................................................................... passim

*Richard Thorpe, et al. v. Walter Investment Management Corp., et al.*,
   No. 14-CV-20880 (S.D. Fla. October 14, 2016) .................................................................... 5

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................... 13

*Schorrig v. IBM Southeast Employees' Federal Credit Union*,
   No. 09-cv-80973-KLR, D.E. 155 (S.D. Fla. Feb. 24, 2012) ................................................... 5

*Seghroughni v. Advantus Rest., Inc.,*
2015 WL 2255278 (M.D. Fla. May 13, 2015) ........................................................... 6

*Stanaford v. Genovese et al.,*
No. 9:13-cv-80923, D.E. 153 (S.D. Fla. August 17, 2015) ......................................... 5

*Vinh Nguyen v. Radient Pharm. Corp.,*
No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............... 11

*Waterford Township General Employees Retirement System v. Bankunited Financial Corporation,*
No. 08-cv-22572-MGC, D.E. 164 (S.D. Fla. June 14, 2013) ..................................... 5

*Waters v. Int'l Precious Metals Corp.,*
190 F.3d 1291 (11th Cir. 1999) .................................................................................. 7

*Wolff v. Cash 4 Titles,*
2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..................................................... 6, 16

*Yedlowski v. Roka Bioscience, Inc.,*
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................. 8

**Other Authorities**

1 Alba Conte, Attorney Fee Awards,
§ 2.19, at 73-74 (3d ed. 2006)................................................................................... 16

Svetlana Starykh and Stefan Boettrich,
*Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review*
(NERA Economic Consulting, 2016) ........................................................................ 14

## MOTION

Lead Plaintiffs Mark Baldwin and Joseph Terranova (collectively, "Plaintiffs"), upon the accompanying Memorandum of Law and the accompanying Declaration of Laurence M. Rosen In Support of Final Approval of Class Action Settlement and An Award of Attorneys' Fees and Reimbursement of Expenses ("Rosen Dec.") and the exhibits attached thereto, hereby move the Court pursuant to Fed. R. Civ. P. 23(e) for an Order awarding: (1) attorneys' fees in the amount of $700,000; (2) reimbursement of $20,298.41 in expenses that were incurred in prosecuting this action; and (3) $5,000 each to Plaintiffs, or $10,000 in total.

A [Proposed] Order approving the requested award of attorneys' fees and expenses will be filed with Plaintiffs' Reply in Further Support of this Motion.

## MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

This Settlement is an excellent result, as it recovers $2.1 million, or 26.0% of the Class's total best-case maximum potential damages of $8.1 million – 50% better than the average settlement of a case this size. Rosen Dec. ¶ 7. The case was hardly auspicious at filing. DS Healthcare Group, Inc., is a financially troubled company; its auditor cautioned that there was substantial doubt it could continue as a going concern. And the very press releases that Plaintiffs allege disclosed the fraud also revealed epic corporate mismanagement; the impact of the disclosure of mismanagement would have to be disaggregated from the impact of the actionable disclosures of fraud – which would prove extremely complex and would significantly reduce damages.

Class Counsel, having achieved the Settlement, now request a payment of attorneys' fees of one third of the Settlement, or $700,000. The attorneys' fees requested are well within the range of fees typically awarded by courts within the Eleventh Circuit. In the Eleventh Circuit, the

1

most important factor in determining the level of attorneys' fees is the quality of the result the attorney achieves. The Settlement is an excellent result and shows what can be accomplished when talented lawyers work efficiently and professionally to resolve disputes to the Class's advantage. Accordingly, a one-third award is fully justified.

The favorable reaction of the Class also weights strongly in support of the attorney fee request.   Over 8,600 Notices were mailed to Class Members detailing the specifics of the settlement, and request for fees and expenses.   To date, no Class Member has objected to the settlement or the fees, and only three Class Members, who bought relatively few shares during the Class Period, opted out of the Settlement. Declaration of Josephine Bravata Concerning Provision of Notice of Proposed Settlement of Class Action ("Bravata Dec.") ¶¶ 12-13.

Plaintiffs also request reimbursement of Lead Counsel's actual litigation expenses in the amount of $20,298.41. These expenses are reasonable, and are of the kind that, in the prosecution of complex securities class actions, attorneys typically incur and recover from the Settlement fund, if they are successful.

Plaintiffs further request that the Court grant compensatory awards to each of the class representatives of $5,000 each.   In the Eleventh Circuit, and throughout the Nation, class representatives are often granted service awards from the settlement to compensate them for their time and the risks incurred. Each of the Plaintiffs spent significant time and effort reviewing pleadings, motions, and other documents, frequently communicated with counsel concerning the status of the case, strategy, and settlement discussion. Plaintiffs' dedicated and diligent efforts have benefited the Class and should be rewarded.

## II.    THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

### A.    The "Percentage of the Fund" Method is the Appropriate Basis for Awarding Attorneys' Fees in the Eleventh Circuit

2

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). In the Eleventh Circuit, courts must determine the appropriate award to attorneys by granting them a percentage of the fund created through their efforts, dubbed the "percentage of the fund method". *Camden*, 946 F.2d at 774 ("the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. . . [h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). This approach is appropriate because it encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class. There is no "hard and fast" rule dictating what constitutes a reasonable percentage of the recovery to award "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 774.[1]

### B.    The Requested Fee is Reasonable Under the *Camden* Factors

Under *Camden*, the court first fixes a benchmark, and then considers the so-called *Camden* factors to determine what constitutes a reasonable percentage award. *See Camden*, 946 F.2d at 772. These factors include: (i) awards in similar cases; (ii) the time and labor required; (iii) the novelty and the difficulty of the questions; (iv) the skill requisite to perform the legal service properly, including the experience, reputation, and ability of the attorneys; (v) the

---

[1] In this regard, the Eleventh Circuit expressly noted that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.

3

preclusion of other employment by the attorney due to the acceptance of the case; (vi) the customary fee, including whether the fee is fixed or contingent; (vii) the amount involved and the results obtained; (viii) the "undesirability" of the case; and (ix) limitations imposed by the client or the circumstances; and (x) the nature and length of the professional relationship with the client.[2]

### 1.    Awards in Similar Cases

*Camden*, decided in 1991, suggested that an appropriate initial benchmark for attorneys' fees is 25%, which a court should adjust up or down based on the specific facts of the case. 946 F.2d at 775. But courts in securities class actions typically award higher percentages due to the special characteristics and challenges posed in such cases.  Examples of these special factors are that they involve "highly complex" issues,[3] require an extraordinary investment of time and resources, are "notably difficult and notoriously uncertain,"[4] and – if they are successful – provide class members with hard cash, rather than less valuable coupons.[5]

Courts in this District have awarded attorneys' fees of either 30% or 33% of the settlement fund in 8 of the last 10 securities class action settlements. *See In re Altisource Portfolio Solutions, S.A. Sec. Litig.*, No. 14-CV-81156-WPD (S.D. Fla. May 30, 2017) (22% of $32 million fund)*; In re Digital Domain Media Group, Inc. Sec. Litig.*, No. 2:12-cv-14333, D.E. 116 (S.D. Fla. April 10, 2017) (33% of $5.5 million fund); *City of Los Angeles v. Bankrate, Inc.*, No. 14-CV-81323,

---

[2] Lead counsel had no relationship with Plaintiffs before this action; thus, this factor is neutral.

[3] *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005).

[4] *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *14 (S.D.N.Y. Feb. 1, 2007) (internal quotations omitted); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) (internal quotations omitted).

[5] *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *10 (S.D.N.Y. Oct. 25, 2006); *In re Lease Oil Antitrust Litig.* (No. II), 186 F.R.D. 403, 447 (S.D. Tex. 1999) (antitrust class action with cash payment).

4

(S.D. Fla. Feb. 6, 2017) (10% of $20 million fund); *Richard Thorpe, et al. v. Walter Investment Management Corp., et al.*, No. 14-CV-20880 (S.D. Fla. October 14, 2016) (33 1/3% of $24 million fund); *Stanaford v. Genovese et al.*, No. 9:13-cv-80923, D.E. 153 at ¶ 4 (S.D. Fla. August 17, 2015) (30% of $1 million fund); *Aranaz v. Catalyst Pharmaceutical Partners Inc.*, No. 13–cv–23878–UU, D.E. 153 at ¶ 18 (S.D. Fla. March 16, 2015), *Howard v. Chanticleer Holdings, Inc.*, No. 12- cv-81123-JIC, D.E. 74 at ¶ 4 (S.D. Fla. August 14, 2014) (33$^{1/3}$% of $850,000 fund); *Fuller v. Imperial Holdings*, No. 11-cv-81184-KAM, D.E. 95 at ¶ 17 (S.D. Fla. Dec. 16, 2013) (30% of $12 million fund); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A.*, No. 08-cv-23317-JAL, D.E. 201, at ¶ 14 (S.D. Fla. July 17, 2013) (33$^{1/3}$% of $37.5 million fund); *Waterford Township General Employees Retirement System v. Bankunited Financial Corporation*, No. 08-cv-22572-MGC, D.E. 164 at ¶ 11 (S.D. Fla. June 14, 2013) (30% of $3,000,000 fund); *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 11-cv-20549, D.E. 103 at ¶ 14 (S.D. Fla. Apr. 24, 2012) (33$^{1/3}$% of $2.75 million fund); *Schorrig v. IBM Southeast Employees' Federal Credit Union*, No. 09-cv-80973-KLR, D.E. 155 at 11 (S.D. Fla. Feb. 24, 2012) (30% of $950,000 fund); *Dance v. Levitt Corporation*, No. 08-cv-60111-DLG, D.E. 151 at ¶ 14 (S.D. Fla. Sep. 28, 2011) (33$^{1/3}$% of $1,948,050 fund); *Miller v. Dyadic International, Inc.*, No. 07-cv-80948-WPD, D.E. 236 at ¶ 4 (S.D. Fla. July 28, 2010) (33$^{1/3}$% of $4,800,000 fund).[6]

Indeed, in cases with recovery of similar size courts routinely award attorneys' fees of 33.3%. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d

---

[6] Court filings sufficient to show the fees awarded in each of these cases are attached as Exhibit 4 to the Rosen Dec.

437, 445 (E.D.N.Y. 2014).[7] Finally, while $2.1 million is an excellent result for a case of this size, $700,000 is a relatively small award for a securities class action and therefore does not raise the same concerns a larger fee award might. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 7, 2007) ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [in that case, $5.5 million] does not create such an issue.")

### 2.      Time and Labor Required

Lead Counsel has devoted significant time and resources to researching, investigating, and prosecuting of this action. By the time the Settlement was reached, Lead Counsel had: (a) investigated the facts and law of claims against DS Healthcare Group, Inc., Daniel Khesin, Renee Barch-Niles, Dianne Rosenfeld, Karl Sweis, and Michael Pope (collectively, "Defendants"), including interviews with former DS Healthcare employees and extensive discussions with counsel in a related case; (b) drafted their initial, Amended, and operative Second Amended Complaint; (c) prepared a mediation statement and participated in an all-day mediation with

---

[7] Indeed, the trend in this Circuit has been to award legal fees of 33.3% of the class action settlement fund. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC,* 2012 WL 1355573 (S.D. Ga. April 18, 2012)(class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal–Mart Stores, Inc.,* 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011)(approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D.Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, Doc. No. 1557 at 8–10 (S.D.Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

nationally recognized mediator Hunter Hughes, Esq.; (d) negotiated the specific terms of the Settlement, including crucial non-monetary terms; and (e) drafted the Stipulation of Settlement and related notices and proposed orders, as well as the brief in support of final approval. *See* Rosen Dec. ¶ 8.

Indeed, as of August 31, 2017, Lead Counsel had expended 237.20 hours with a market value, or lodestar, of more than $148,710 at counsel's current billing rates,[8] providing a multiplier of about 4.71. Rosen Dec., Ex. 2 ("Rosen Fee Dec."). While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third of the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). The 4.71 multiplier requested here is within the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g, Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *3 n.1 (N.D. Ga. Mar. 4, 2008) (noting that between 2001 and 2003, the average multiplier was 4.35) (citing *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004)); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) ("In many cases, including cases in this jurisdiction, multiples much higher than three have been approved"); *Ingram v. The Coca-Cola Co*, 200 F.R.D. 685, 696 (N.D. Ga. 2001)

---

[8] The Supreme Court has held that the use of current rather than historical rates is appropriate in examining the lodestar because current rates more adequately compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989). Courts in this Circuit also have stated that it is appropriate to use counsel's current rates in order to compensate for the delay in payment and inflation. *See, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988). Rates of The Rosen Law Firm, P.A. similar to those charged here were approved in *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *13 (D.N.J. June 26, 2017).

(awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."). Moreover, lodestar multipliers should be adjusted upwards when, as here, Counsel are able to reach an excellent settlement efficiently:

> [I]t is probable that the superior efficiency or economy in achieving the successful results will yield a time/rate product that is too low to represent reasonable compensation for services. Accordingly, an upward adjustment of the lodestar would be appropriate for the results obtained with a superior savings of costs, so that this commendable effort will be recognized and rewarded, and not penalized.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) (internal quotations omitted).

Likewise, by resolving this case efficiently, the Parties ensured that they did not drain the Court's resources in overseeing a large, complex securities class action.

As such, the time and labor expended justify the fee requested.

### 3.    The Novelty and Difficulty of the Questions Involved

Plaintiffs faced all the "multi-faceted and complex legal questions endemic" to cases alleging violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig*., 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. CIV.A. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). Indeed, even today, "[l]egal precedents are continually making it more difficult to plead securities class actions." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). Therefore, when attorneys bring meritorious securities class actions and are able to provide substantial relief to class members, they should be rewarded. *Id.*

This case had more than its share of complex issues. In addition to the difficulty of

8

proving scienter given that the lead defendant, Daniel Khesin, is a young entrepreneur whose responsibilities may have overwhelmed him and contributed to the inaccurate financial statements, this case also presents difficult loss causation issues. There were essentially two stories unfolding at the same time and often in the same press releases. These press releases revealed that Defendants' past statements may have been false; but they also documented DS Healthcare's ongoing staggering corporate dysfunction. *See, e.g.,* Press Release dated March 28, 2016, attached as Exhibit 99.1 to Form 8-K filed with the SEC on the same date. DS Healthcare's corporate dysfunction in March 2016 did not reveal that Defendants' earlier statements were false, and so investors likely could not recover for their losses connected with these disclosures. But investors would have greeted the disclosures as critical new information affecting their decisions to buy or sell DS Healthcare stock, as disclosure of corporate mismanagement dimmed DS Healthcare's future prospects. Valuing the backwards-looking disclosure that Defendants had made false statements against the disclosure that DS Healthcare was, as of March 2016, a highly non-functional company, would have been an exceptionally difficult undertaking, and would have dramatically reduced recoverable damages. Moreover, Plaintiffs would have to prove loss causation and damages with expert testimony, which would cost at least $200,000. Rosen Dec. ¶¶ 2, 3; *In re Pfizer Inc. Sec. Litig.*, No. 04-CV-9866-LTS-HBP, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014), *vacated on other grounds*, 819 F.3d 642 (2d Cir. 2016) (granting summary judgment because "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims."). The results of battles of the experts are notoriously difficult to predict. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008). Plaintiffs would also have to retain market efficiency and accounting experts, which would cost at least $150,000 and $100,000, respectively. Rosen Dec. ¶¶ 2-4 *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251

F.R.D. 656, 664 (D. Utah 2008) ("Defendants could have, and should have, provided an expert opinion of their own if they sought to challenge Dr. Hakala's conclusions"); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 259 (S.D.N.Y. 2014) (granting summary judgment for failure to produce accounting expert to contradict Defendants' expert).

And the sheer number of elements Plaintiffs must prove makes this all the more difficult. Defendants can obtain judgment on a motion to dismiss, a motion for summary judgment, or at trial. They can defeat class certification if Plaintiffs cannot prove to both this Court **and** the jury that Plaintiffs are entitled to the presumption of reliance, by rebutting the presumption in either forum, or again by excluding Plaintiffs' market efficiency expert. They can reduce or eliminate recoverable damages by excluding Plaintiffs' damages expert or convincing the jury that damages are much less than what Plaintiffs claim. They can dodge liability by excluding Plaintiffs' accounting expert, too, or convincing the jury to believe Defendants' expert instead. If Plaintiffs surmount **every one** of these challenges, and more, then Plaintiffs would be entitled to a judgment of $8.1 million – if every class member filed a claim, which they would not. Seen in this context, recovering 26.0% of total maximum damages is an exceptional result.

This factor supports the requested fee.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by Lead Counsel and the standing of Lead Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n. 15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). Lead Counsel has developed a reputation for zealous advocacy in relatively small securities class actions like this one. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406

DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement"); *Howard v. Chanticleer Holdings, Inc.*, No. 12-81123-CIV, 2013 WL 104998, at *3 (S.D. Fla. Jan. 4, 2013) ("[T]he Rosen Firm is plainly qualified to serve as class counsel here"); *Roka*, 2016 WL 6661336, at *21 (the Rosen Law Firm "is highly experienced in the complex field of securities fraud class action litigation.") Lead Counsel's hard-won reputation allowed them to credibly threaten to take this case as far as it takes.[9]

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Khesin and DS Healthcare Defendants were represented by Squire Patton Boggs, widely recognized as one of the premier law firms in this country, and its partner Alvin Davis, who has appeared in Chambers USA each year since 2004. Rosen Dec. ¶ 17.  Former management was represented by Holland & Knight LLP, an Am Law 100 which was named a "Florida Powerhouse" by Law360, and its partner Tracy Nichols, who also has appeared in Chambers USA since 2008. Rosen Dec. ¶ 18.

Lead Counsel prosecuted this case zealously and skillfully. Lead Counsel conducted an extensive factual investigation, including substantive interviews with former DS Healthcare employees and detailed discussions with counsel in a related case, before the mediation and the filing of the Second Amended Complaint. Rosen Dec. ¶ 8.  Lead Counsel then quickly and thoroughly analyzed DS Healthcare's restated financial statements, filed a week before the mediation. Finally, Lead Counsel negotiated a highly favorable settlement in the face of determined opposition from the talented lawyers who represented Defendants.

---

[9] A copy of Class Counsel's firm resume is appended to the Declaration of Laurence Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses (the "Rosen Fee Dec.").

This factor supports the requested fee.

### 5.      Preclusion of Other Employment

When Lead Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and make significant out-of-pocket expenses. The time spent by Lead Counsel on this case was at the expense of the time that they could have devoted to other matters.

This factor supports the requested fee.

### 6.      The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

The Court should give substantial weight to the contingent nature of Lead Counsel's fees when assessing the fee request. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *Checking Account*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor in determining an appropriate fee award") (internal quotations omitted); *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees"). This case is fully contingent, meaning that Class Counsel has not received any payments whatsoever and has put up more than $20,298.41 of its own money for out-of-pocket expenses, and paid attorney salaries (not counted in the $20,298.41) for the duration of the case.

Experience eventually teaches every lawyer that there is no such thing as a certain win in litigation. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Even a victory at trial does not guarantee success, as the plaintiffs in the recent *BankAtlantic* case discovered. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011). And even surviving post-trial motions in the district court is no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1148-49 (11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after almost seven years of litigation and rendering judgment in favor of defendant based on novel ruling that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations).

And even where counsel are able to obtain an excellent result for the Class, there is no guarantee that they will be compensated for their time. For example, *in Petrie v. Electronic Game Card, Inc.*, 10-cv-252-DOC-KES (C.D. Cal.), Lead Counsel's clients were dismissed by the trial court on a novel legal issue and obtained a reversal on appeal. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 961 (9th Cir. 2014). By that time, the bankrupt corporate defendant's entire insurance policy was spent. Lead Counsel were nevertheless able to negotiate a $1.755 million settlement from individual defendants. Despite investing more than $1.6 million of attorney time and obtaining excellent results, Lead Counsel requested and were awarded a negative lodestar multiplier of 0.267, meaning that Lead Counsel received compensation amounting to only 26.7% of its hourly rate. Rosen Dec. ¶ 19. That case, which is hardly the only instance where Lead Counsel or other firms were able to recover only a small fraction of their billable time, highlights the significant risks that Lead Counsel shouldered here for the benefit of the Class.

Lead Counsel's efforts in achieving this result have been without compensation of any

kind, and its fee and payment of expenses have been wholly contingent upon the result achieved.

The contingent nature of Class Counsel's representation strongly favors the requested fee.

### 7.     The Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The Settlement Amount of $2,100,000 is an outstanding result. In this case, before the mediation, Lead Counsel retained a damages expert who analyzed what Plaintiffs could recover if they won at trial on every material point and defeated Defendants' every affirmative defense. Rosen Dec. ¶ 7.  To arrive at a "best case" maximum estimate of damages, the expert made several very optimistic or ad hoc assumptions, for example that all alleged stock drops are attributed to revelation of Defendants' fraud, and that there were no shareholders who could not avail themselves of the presumption of reliance because they did not rely on the integrity of the market price.[10] With these optimistic assumptions, Plaintiffs' expert estimates total maximum damages are approximately $8.1 million. Rosen Dec. ¶ 7. The Settlement thus returns an excellent 26.0% of maximum damages, far exceeding the average recovery in cases of comparable size. Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* 36 (NERA Economic Consulting, 2016) (in cases with estimated damages of less than $20 million, median settlement between 1996-2016 returned 18.4% of estimated damages) (attached as Exhibit 3 to the Rosen Dec.).

### 8.     The "Undesirability" of the Case

The Eleventh Circuit has recognized undesirability of a case as a relevant factor in

---

[10] *GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 100 (S.D.N.Y. 2013) (entering judgment in favor of defendant because investor did not rely on integrity of market price).

14

considering a request for attorneys' fees. "Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Perez v. Asurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at *7 (S.D. Fla. Aug. 8, 2007) (internal quotations omitted). After filing the Complaint on behalf of Mr. Shah, Lead Counsel issued PSLRA-mandated notice to potential class members, alerting them that they could move to be appointed lead plaintiffs in this case. The notice likewise informed other plaintiffs' securities firm that they could be appointed lead counsel in this case. Yet despite this public notice, only two other firms were willing to be appointed lead counsel. D.E. 43, 45.

Moreover, this was complex case involving defendants with limited financial resources. The Company had extremely limited insurance coverage and was teetering on the brink of bankruptcy, with its auditor concluding there was doubt the Company could continue as a going concern. Rosen Dec. ¶¶ 5, 12.  Beyond that, the factual question of disaggregating losses due to corporate mismanagement from losses due to fraud loomed large from the beginning. These "thorny factual questions" and "difficult and risky" claims weigh in favor of the requested fee. *Perez*, 2007 WL 2591180, at *7.

**9.      The Time Limitations Imposed by the Client or the Circumstances**

While not a limitation per se, Lead Counsel worked with the Court's schedule to take this case through from filing to settlement hearing in about 18 months. This rapid-paced litigation ensures that class members will receive payments much more quickly than investors usually do in securities class actions, warranting a higher award. *Ressler*, 149 F.R.D. at 655.

**C.      Important Public Policy Considerations Support The Requested Fees**

Public policy considerations support the requested fee award, as courts recognize that compensating attorneys in securities class actions is critical, or none will be filed. Yet "Congress,

the Executive Branch, and this Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2 (similar). Courts should award fees high enough to encourage lawyers to bring meritorious actions. *Ressler*, 149 F.R.D. at 657; *accord Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012). In this case, the rationale is especially compelling. Lead Counsel has obtained a recovery for class members that far exceeds the percentage recovery that the median securities class action provides even in the face of inauspicious circumstances.

### D. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action"); 1 Alba Conte, Attorney Fee Awards, § 2.19, at 73-74 (3d ed. 2006) ("Alba Conte") ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

Lead Counsel efficiently litigated this action and incurred expenses totaling $20,298.41 in connection with the prosecution and resolution of the Action. *See* Rosen Fee Decl. ¶8. These

expenses include amounts incurred to pay fees of consulting experts, mediation fees, copying, telephone, travel costs, computer-assisted research, court fees, travel, mailing and fax costs, and other customary expenditures.

Travel, experts, copying, court fees, claims administration and other customary expenditures should be reimbursed. *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698, at *4 (N.D. Ga. May 22, 2009); *Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014).

The expenses incurred were reasonable and necessary to successfully prosecute this case. The Notice informed Settlement Class Members that Class Counsel would seek reimbursement of expenses in an amount not to exceed $25,000. *See* Bravata Decl. Ex. A. To date, there have been no objections to Class Counsel's request for expenses. *Id.* at ¶13. The deadline to object is September 14, 2017. *Id.*

### E.   Payments to Plaintiffs

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Checking Account Overdraft.*, 830 F. Supp. 2d at 1357 (granting service awards of $5,000 per class representative). Courts determine service awards by looking at "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* Courts in this district commonly authorize service awards. *Pinto*, 513 F. Supp. 2d at 1344 ($7,500 per plaintiff); *Aracruz Celulose* at 16 ($40,000); *IBM* at 11 ($1,500 for each class representative); and *Imperial Holdings*, at 21 ($10,000).

Lead Plaintiffs have discharged their duties with attentiveness, diligence, and zeal. This included reviewing pleadings, motions, and other documents, frequently communicating with

counsel concerning the status of the case, court documents, strategy, and settlement discussion. In light of the work done by Lead Plaintiffs, the amounts requested are eminently reasonable. Moreover, there were no objections. Rosen Dec. ¶ 16.  Thus, the Court should award Lead Plaintiffs $5,000 each.

## III.    CONCLUSION

For the foregoing reasons, the Court should award Class Counsel 33 1/3% of the Gross Settlement Fund, or $700,000, award reimbursement of expenses of $20,298.41, and award Plaintiffs $5,000 each, or $10,000 in total.

Dated: August 31, 2017                      Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By:___/s/ Laurence Rosen____
                                            Laurence M. Rosen
                                            Fla. Bar No. 0182877
                                            275 Madison Avenue, 34th Floor
                                            New York, New York 10016
                                            Phone: 212-686-1060
                                            Fax: 212-202-3827
                                            Email: lrosen@rosenlegal.com

                                            Lead Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, August 31, 2017, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence Rosen</u>

19